# SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

See other side for instructions

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☒ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 1 Court Street, Middletwon, CT 06457 | (860) 343-6400 | October 24, 2017 |

☒ Judicial District  ☐ Housing Session  ☐ G.A. Number: — At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349): **Middletown**

Case type code (See list on page 2) — Major: **T**  Minor: **90**

**For the Plaintiff(s) please enter the appearance of:**

Name and address of attorney, law firm or plaintiff if self-represented: **Lewis Chimes**
Juris number: **303446**
Telephone number: **(203) 324-7744**

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes ☐ No

Email address: **lchimes@chimeslaw.com**

Number of Plaintiffs:   Number of Defendants:   ☐ Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party | |
|---|---|---|
| First Plaintiff | Name: Patick Torneo  Address: Connecticut State Police 1111 Country Club Road, Middletown, CT 06457 | P-01 |
| Additional Plaintiff | Name:  Address: | P-02 |
| First Defendant | Name: Dora Schriro  Address: Connecticut State Police 1111 Country Club Road, Middletwon, CT 06457 | D-01 |
| Additional Defendant | Name: Brian Meraviglia  Address: Connecticut State Police 1111 Country Club Road, Middletown, CT 06457 | D-02 |
| Additional Defendant | Name: Regina Rush-Kittle  Address: Connecticut State Police 1111 Country Club Road Middletown, CT 06457 | D-03 |
| Additional Defendant | Name: David Rosado  Address: Connecticut State Police 1111 Country Club Road, Middletown, CT 06457 | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

Signed (Sign and "X" proper box) — ☒ Commissioner of the Superior Court  ☐ Assistant Clerk
Name of Person Signing at Left: **Lewis H. Chimes**
Date signed: 9/25/17

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only — File Date

ATTEST: A TRUE COPY
Richard W. Albrecht
State Marshal
Middlesex County
An Indifferent Person

I certify I have read and understand the above:
Signed (Self-Represented Plaintiff)   Date   Docket Number

(Page 1 of 2)

Print Form    Reset Form

RETURN DATE: October 24, 2017

PATRICK TORNEO,

Plaintiff,

v.

DORA SCHRIRO, BRIAN MERAVIGLIA, REGINA RUSH-KITTLE, and DAVID ROSADO,

Defendants.

SUPERIOR COURT

MIDDLESEX

JUDICIAL DISTRICT

September 24, 2017

# COMPLAINT

1. This is an action under 42 U.S.C. §1983 for violation of due process breach in violation of the Fourteenth amendment of the United States Constitution relating to State of Connecticut Department of Emergency Services and Public Protection, Division of State Police ("CSP")'s improper removal of Patrick Torneo from the position of Lieutenant during his improperly extended working test period.

2. At all times mentioned herein, the plaintiff, Patrick Torneo, resided in Rocky Hill, Connecticut.

3. Patrick Torneo is currently a Master Sergeant in the Division of State Police within the Connecticut Department of Emergency Services and Public Protection (the "CSP"). He was hired in June 2001 and has served in the CSP for over sixteen years. Throughout his career, he received numerous decorations and extremely positive performance reviews.

4. At all times mentioned herein, the defendant Dora Schriro was Commissioner of the Connecticut Department of Emergency Services and Public Protection, and the Commanding Officer of the Division of State Police. She is being sued in her individual capacity.

5. The defendant, Brian Meraviglia, is currently the Deputy Commissioner of the Connecticut Department of Emergency Services and Public Protection, and the Commanding Officer of the Division of State Police. He became Commanding Officer in the summer of 2014. He is being sued in his individual capacity.

6. At all times mentioned herein, the defendant Regina Rush-Kittle was a Major in the Connecticut State Police and the Commander of the Division of State Police Office of Professional Standards and Training. The CSP internal affairs unit is part of Professional Standards and Training. She is being sued in her individual capacity.

7. At all times mentioned herein, Captain David Rosado, was in charge of the Internal Affairs Unit of CSP. He is being sued in his individual capacity.

8. At all times mentioned herein, the Andrew Matthews was a Sergeant in the Connecticut State Police, and the President of the Connecticut State Police Union, Inc. ("NP-1") The Connecticut State Police Union, Inc., represents state police officers with the rank of Mater Sergeant or below.

9. At the time of his removal from the rank of Lieutenant, Master Sergeant Torneo was a member of the Connecticut State Employees Association, SEIU Local 2001 (the "Union"), which is the exclusive bargaining agent for the NP-9 unit. The NP-9 unit consists of all State Police Lieutenants and Captains.

10. At all relevant times, when an officer in CSP is promoted to a higher rank through CSP's examination process, the officer serves a "working test period" of one year, that is considered part of the initial examination process.

11. Conn. Gen. Stat. §5-230 governs the standard for removal of a state employee during their working test period:

> At any time during the working test period, after fair trial, the appointing authority may remove any employee if, in the opinion of such appointing authority, the working test indicates that such employee is unable or unwilling to perform his or her duties so as to merit continuance in such position and shall report such removal to the commissioner.

12. The Connecticut State Police Policy Manual also states the standard for removing a state police officer during a working test period:

    > At any time during the work test period and after a fair trial, an appointing authority may remove an employee if, in the opinion of the appointing authority, the work test period indicates that the employee is unable or unwilling to perform the prescribed duties required to merit continuance in the new job position.

13. Conn. Gen. Stat. §5-226 states in pertinent part:

    > No person, by himself or in cooperation with one or more persons, may (1) wilfully defeat, deceive or obstruct any person in respect to his right of taking any examination for or receiving an appointment to the classified service according to this chapter or according to any regulations adopted under this chapter; (2) wilfully, corruptly or falsely mark, rate, grade, estimate or report upon the application, examination, qualifications or standing of any person whose name has been placed upon any candidate list pursuant to the provisions of this chapter, or aid in so doing; (3) wilfully make any false representation concerning any application or examination or concerning the person applying or examined; (4) wilfully or corruptly furnish to any person any special or secret information for the purpose of either improving or injuring the prospects or chances of any person applying and competing for employment in the classified service; . . . or (6) use, represent to use, promise or endeavor to use influence or official or political authority to secure for any person any appointment or prospect of appointment to any position in the classified service.

14. A working test period may be extended by an appropriate designee of the Department of Administrative Services, for an additional six months.

15. On August 22, 2000, the Department of Administrative Services issued a letter (General Letter No. 31) clarifying the limited circumstances when a working test period could be extended:

    a. When an employee is placed on sick leave for more than 15 days during the working test period;
    b. When an employee is placed on Workers Compensation during the Working Test Period;

    c.    When an employee is placed on leave of absence without pay for more than 3 days;

    d.    When an employee transfers to another agency in the same class having partially completed the test period;

    e.    When an employee's performance during the working test period is steadily improving, but has not been entirely satisfactory, an extension may be requested on those rare occasions where the extension would allow a more extensive evaluation.

16. DAS General Letter 31 also states that individuals must be counseled prior to any extension of the working test period due to performance deficiencies.

17. DAS General Letter 31 also states that individuals must be notified in writing prior to any extension of their working test period.

18. A lieutenant in CSP who is removed during the working test period for unsatisfactory performance has no administrative remedy through the collective bargaining process.

19. On April 8, 2013, Master Sergeant Torneo was a Master Sergeant serving as second in command at Troop F.

20. On April 8, 2013, Troop F was advised that Old Saybrook Police officers were engaged in a motor vehicle pursuit on Route 153 of a vehicle occupied by two suspects from a robbery that had just occurred in Old Saybrook.

21. Detective Scott Wisner, also an employee of CSP, was involved in the pursuit. His vehicle was struck by the suspects' vehicle. Both vehicles careened off the side of the road down a steep embankment.

22. The robbery suspects opened fire and Detective Wisner returned fire. During the exchange, Detective Wisner was shot.

23. Master Sergeant Torneo responded to the scene during the active gunfire exchange.

24. He observed Detective Wisner trapped in his vehicle, went down the embankment, placed himself in the line of fire, and pulled Wisner to safety.

25. The evening of Detective Wisner's shooting, Torneo and several other CSP officers went to Wisner's home to see him following the shooting.

26. The following morning, officers in the Middletown Police Department found Master Sergeant Torneo in his cruiser on the side of the road and they took him to the Middletown Police Department.

27. The Middletown police officers were aware of the incident involving the shooting of a State Trooper the previous day. They were concerned for the Master Sergeant Torneo's wellbeing. No charges were brought against Master Sergeant Torneo. The Middletown Police Department handled the incident as a medical issue.

28. Prior to the incident with the Middletown police, Patrick Torneo had not received any supportive counseling by CSP. After the incident, Master Sergeant Torneo was diagnosed with post-traumatic stress disorder, and treated for symptoms related to his involvement with on-duty shooting incident.

29. The incident involving the Middletown police the morning after the shooting was reported up the chain of command within the CSP. This chain of command included his immediate supervisor, Lieutenant Cassista, defendant Brian Meraviglia, who was a Major at the time, Major McLean, Lieutenant Colonel Corona, and Colonel Stebbins, the commander of CSP at the time.

30. CSP took no disciplinary actions against Master Sergeant Torneo and did not deem it necessary to conduct an internal affairs investigation.

31. On September 6, 2013, Master Sergeant Torneo was promoted to the rank of Lieutenant. His working test period of one year was set to expire on September 6, 2014.

32. On December 12, 2013, three months after his promotion to Lieutenant, Patrick Torneo

was awarded the "Medal for Bravery" for his heroic rescue of Detective Wisner.

33. During his working test period, Lt. Torneo's supervisors were Captain Gould and Captain Battle.

34. At all times during his working test period, Lt. Torneo performed his duties in an exemplary and satisfactory manner.

35. On September 11, 2014, after the conclusion of his one year working test period, Captain Battle and Gould drafted a final probationary evaluation, and confirmed that Patrick Torneo's performance had been fully satisfactory.

36. On January 21, 2014, four months after Patrick Torneo was promoted to Lieutenant, an anonymous complaint was made, accusing CSP of covering up the fact that he had driven drunk on the night of a police shooting in April 8, 2013.

37. CSP did not follow up on that anonymous complaint at the time.

38. In April 2014 (more than a year after the Middletown incident), the CSP received a second anonymous complaint assailing the CSP for covering up for Master Sergeant Torneo on the morning of April 8, 2013.

39. In 2014, there had been several complaints about sexual discrimination at Troop F; although Torneo was not directly accused of discrimination, he had been commanding officer of Troop F since his promotion.

40. Andy Matthews, the President of the State Troopers Union (NP-1), had a history of intervening in personnel matters when he believed that ranking officers were taking unpopular positions with union members. He would bypass regular channels and go directly to Commissioner Schriro.

41. Mathews went directly to Commissioner Schriro and demanded that Torneo be removed

from Troop F.

42. The anonymous complaints and Matthews' attacks on Torneo were motivated by his efforts to pursue the agenda of the female troopers.

43. On information and belief, Commissioner Schriro intervened and on May 6, 2014 Patrick Torneo was transferred from Troop F to CSP Headquarters.

44. As a result of Sgt. Matthews's improper influence and Commissioner Schriro's intervention, Major Regina-Rush Kittle instigated an Internal Affairs investigation against Patrick Torneo and his immediate supervisor, Mark Cassista pertaining to the incident in Middletown the morning after the shooting on May 29, 2014.

45. The re-opening of an Internal Affairs investigation over one year after the shooting and incident against a State Trooper who had shown extraordinary courage in the line of fire, and who had documented PTSD from the incident, was truly outrageous.

46. Every ranking officer in Patrick Torneo's line of command knew what had happened, and nevertheless promoted Torneo and awarded him the Medal of Bravery for his heroism in rescuing Det. Wisner.

47. Although the two anonymous complaints accused higher level officers of covering up for Torneo, the investigation was redirected and focused only on Torneo and his immediate supervisor at the time, Captain Mark Cassista.

48. Patrick Torneo and Cassista were scapegoated in order to avoid impugning higher level command and subjecting their involvement to criticism.

49. Captain David Rosado conducted the investigation under the supervision of Major Rush-Kittle. At various times in meetings with Torneo, he repeatedly expressed that there was insufficient evidence to sustain the charges against him.

50. On August, 6, 2014, Major Regina Rush-Kittle, Commanding Officer of Professional Standards and Compliance (Internal Affairs) requested that Lt. Torneo's working test period be extended for an additional six months. Major Rush-Kittle was conducting an internal affairs investigation that pre-dated Lt. Torneo's promotion and had nothing to do with his performance.

51. Major Rush-Kittle's extension of Lt. Torneo's working test period violated the State of Connecticut's rules and policies.

52. Major Rush-Kittle was not Lt. Torneo's supervisory officer and was not authorized to extend Lt. Torneo's working test period. Major Rush-Kittle never notified Torneo's supervisors prior to seeking the extension of his working test period.

53. Major Rush-Regina Rush-Kittle Kittle's extension of the working test period due to the internal affairs investigation that pre-dated Lt. Torneo's promotion was not an authorized reason for extending the working test period.

54. Patrick Torneo was not notified in writing in advance of the extension of his working test period, in violation of State of Connecticut's rules and policies.

55. By letter dated October 2, 2014, the CSP informed Lieutenant Torneo that he was suspended for five work days without pay, to be reflected in his personnel records. The letter also stated: "In addition to the suspension, you are being demoted from the rank of probationary Lieutenant to the rank of Master Sergeant."

56. Patrick Torneo timely pursued his administrative remedies through pursuant to the Collective Bargaining Process.

57. The Union filed a grievance on October 14, 2014 relating to both the suspension and the demotion.

58. The matter went to arbitration in June-July 2015.

59. The Arbitrator issued its Decision and Award on November 16, 2015.

60. The Arbitrator found that the CSP failed to prove that the misconduct charged actually occurred. Absent such proof, there was no just cause for the five day suspension. Therefore, the Arbitrator set aside the five working days suspension.

61. The Arbitrator also determined he lacked jurisdiction to rule on the demotion issue because it occurred during the extended working test period, and he had no jurisdiction under the NP-9 collective bargaining agreement. The arbitrator noted in his decision that if the demotion had not occurred during the working test period, he would have set aside the demotion.

62. As a result of CSP's improper extension of the working test period, Patrick Torneo demoted while still under his working test period.

63. If Torneo's working test period had expired, as required under the rules and policies, he would have been a tenured lieutenant and his promotion would have been arbitrated under the "Just Cause" standard of the NP-9 CBA and he would have prevailed at his arbitration.

64. In light of the arbitrator's ruling, on January 2016, the Union sent a letter to the CSP on Torneo's behalf requesting that the CSP elevate Master Sergeant Torneo back to the rank of Lieutenant.

65. In a letter from Colonel Meraviglia, the current Commander of CSP, dated January 27, 2016, the CSP informed the Union that it would not reinstate Master Sergeant Torneo's rank to Lieutenant.

66. Patrick Torneo has exhausted his administrative remedies.

67. Patrick Torneo has no alternative administrative remedies to pursue his claim.

**COUNT ONE   Patrick Torneo as to Defendant Dora Schriro**
**(42 U.S.C. §1983 Violation of Due Process)**

68. Paragraphs 1 – 64 are incorporated herein as paragraphs 1 – 64 of this First Count.

69. At all times mentioned herein, defendant Dora Schriro was acting under color of law.

70. Commissioner Schriro violated Patrick Torneo's constitutional right to due process, under the Fourteenth Amendment to the United States Constitution, by

    a. Wilfully, obstructing and/or defeating Torneo's right to be a Lieutenant in the CSP, in violation of Conn. Gen. Stat. §52-226

    b. Wilfully and/or corruptly relying upon secret information provided to injure Torneo's right to be a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

    c. Wilfully using influence, and official and/or political authority to prevent Torneo from becoming a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

71. Commissioner Schriro was improperly influenced by Sgt. Mathews outside of the chain of command and beyond Mathews' authority as a union representative, in permitting CSP to reopen the Internal Investigation of Torneo, transferring Torneo from Troop F to headquarters.

72. Commissioner Schriro was improperly influenced by the anonymous complaints in permitting CSP to reopen the Internal Investigation of Torneo, transferring Torneo from Troop F to headquarters.

73. Despite the fact that there had been no investigation of Torneo's role in the discrimination allegations at Troop F, Commissioner Schriro allowed those unfounded

allegations to improperly influence her decision to have him transferred and exert pressure to reopen the internal affairs investigation against Patrick Torneo.

74. As a result of Commissioner Schriro's violations of Torneo's right to due process, Torneo has suffered economic and compensatory damages.

**COUNT TWO**     **Patrick Torneo as to defendant Brian Meraviglia**
                  **(42 U.S.C. §1983 – Violation of Due Process**

75. Paragraphs 1 – 66 are incorporated herein as paragraphs 1 – 66 of the Second Count.

76. At all times mentioned herein, the defendant Brian Meraviglia was acting under color of law.

77. Brian Meraviglia violated Patrick Torneo's right to due process of law, under the Fourteenth Amendment of the United States Constitution, in one or more of the following ways:

   a. Colonel Meraviglia demoted Patrick Torneo despite the fact that after "fair trial," there were no performance issues relating to Torneo's performing his duties as a lieutenant, in violation of CSP policies and state statutes.

   b. Colonel Meraviglia permitted Patrick Torneo's working test period as Lieutenant to be improperly extended, despite the fact that there was no proper justification under state statutes and policies and CSP policies pertaining to working test periods for extension of the working test period.

   c. Colonel Meraviglia permitted the re-opening of an internal affairs investigation into Torneo's interaction with the Middletown Police Department the morning after the police shooting, despite his knowledge of the events and the fact that the chain of command, including him, had already chosen to treat it as a medical issue.

78. Brian Meraviglia violated Patrick Torneo's constitutional right to due process, under the Fourteenth Amendment to the United States Constitution, by:

   a. Wilfully, obstructing and/or defeating Torneo's right to be a Lieutenant in the CSP, in violation of Conn. Gen. Stat. §52-226

   b. Wilfully and/or corruptly relying upon secret information provided to injure Torneo's right to be a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

   c. Wilfully using influence, and official and/or political authority to prevent Torneo from becoming a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

79. As a result of Brian Meraviglia's violations of Patrick Torneo's constitutional due process rights, he has suffered economic and compensatory damages.

**COUNT THREE      Patrick Torneo as to defendant Regina Rush-Kittle**
**(42 U.S.C. §1983 – Violation of Due Process)**

80. Paragraphs 1 – 66 are incorporated herein as paragraphs 1 – 66 of this Third Count.

81. Major Rush-Kittle violated Patrick Torneo's due process rights, in violation of the Fourteenth Amendment of the United States Constitution, by reopening and initiating an internal affairs investigation of a year old incident based upon anonymous complaints, and improper influence and pressure exerted upon her in violation of Conn. Gen. Stat. §52-226, and CSP policies pertaining to internal affairs complaints.

82. Major Rush-Kittle improperly sought to extend Lieutenant Torneo's working test period, and deny him the protections available through his collective bargaining agreement, despite the fact that there was no proper justification under state statutes and policies and CSP policies pertaining to working test periods for extension of the working test period.

83. Major Rush-Kittle improperly limited the internal affairs investigation to Patrick Torneo and his Supervisor Mark Cassista in order to scapegoat them for the incident and avoid focusing upon more senior officers who knew the facts about the incident and had allegedly covered up any potential wrongdoing. This was in violation of CSP internal affairs policies.

84. Major Rush-Kittle oversaw a biased and impartial investigation that led to a predetermined outcome. This was in violation of CSP internal affairs policies.

85. Major Rush-Kittle Brian violated Patrick Torneo's right to due process of law, under the Fourteenth Amendment of the United States Constitution, in one or more of the following ways:

    a. Wilfully, obstructing and/or defeating Torneo's right to be a Lieutenant in the CSP, in violation of Conn. Gen. Stat. §52-226

    b. Wilfully and/or corruptly relying upon secret information provided to injure Torneo's right to be a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

    c. Wilfully using influence, and official and/or political authority to prevent Torneo from becoming a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

86. As a result of Regina Rush-Kittle's violations of Patrick Torneo's constitutional due process rights, he has suffered economic and compensatory damages.

   **COUNT FOUR    Patrick Torneo as to defendant David Rosado**
   **(42 U.S.C. §1983 – Violation of Due Process)**

87. Paragraphs 1 – 66 are incorporated herein as paragraphs 1 – 66 of this Fourth Count.

88. Captain Rosado violated Patrick Torneo's due process rights, in violation of the Fourteenth Amendment of the United States Constitution, by reopening and initiating an internal affairs investigation of a year old incident based upon anonymous complaints, and improper influence and pressure exerted upon her in violation of Conn. Gen. Stat. §52-226, and CSP policies pertaining to internal affairs complaints.

89. Captain Rosado improperly sought to extend Lieutenant Torneo's working test period, and deny him the protections available through his collective bargaining agreement, despite the fact that there was no proper justification under state statutes and policies and CSP policies pertaining to working test periods for extension of the working test period.

90. Captain Rosado improperly limited the internal affairs investigation to Patrick Torneo and his Supervisor Mark Cassista in order to scapegoat them for the incident and avoid focusing upon more senior officers who knew the facts about the incident and had allegedly covered up any potential wrongdoing. This was in violation of CSP internal affairs policies.

91. Captain Rosado oversaw a biased and impartial investigation that led to a predetermined outcome. This was in violation of CSP internal affairs policies.

92. Captain Rosado violated Patrick Torneo's right to due process of law, under the Fourteenth Amendment of the United States Constitution, in one or more of the following ways:

    a. Wilfully, obstructing and/or defeating Torneo's right to be a Lieutenant in the CSP, in violation of Conn. Gen. Stat. §52-226

b.  Wilfully and/or corruptly relying upon secret information provided to injure Torneo's right to be a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

c.  Wilfully using influence, and official and/or political authority to prevent Torneo from becoming a tenured Lieutenant in CSP, , in violation of Conn. Gen. Stat. §52-226.

93. As a result of Regina Rush-Kittle's violations of Patrick Torneo's constitutional due process rights, he has suffered economic and compensatory damages.

**COUNT FIVE (Punitive Damages – all defendants)**

94. Paragraphs 1 – 90 are incorporated herein as paragraphs 1- 90 of this Fifth Count.

95. Defendants acted with deliberate indifference, reckless indifference, and/or malice as to the rights of Patrick Torneo.


### PRAYER FOR RELIEF

Wherefore, the plaintiffs respectfully pray that this Court take jurisdiction over this case and grant damages in excess of $15,000 and judgment against the defendant. Plaintiff prays that the following relief be awarded:

a.  a declaratory judgment that the defendants violated 42 U.S.C. § 1983 by failing to follow the rules applicable to extension of working test periods and removal from positions during working test periods;

b.  injunctive relief, as deemed appropriate by the court, to include the following:

(1) Reinstating Patrick Torneo to his position as a Lieutenant in the

Connecticut State Police;

(2) Reinstating Patrick Torneo's full pension and seniority benefits as a Lieutenant retroactive to the date of his demotion;

(3) Enjoining the defendant from retaliating against Patrick Torneo or any other individual who has participated or otherwise cooperated in the prosecution and litigation of this case;

c. damages for economic losses, including lost benefits, that he has suffered as a result of defendants' conduct;

d. damages for the emotional harm he has suffered;

e. reasonable attorney fees and costs;

f. pre-judgment and post-judgment interest on his economic losses,

g. punitive damages;

h. such other equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED
THE PLAINTIFF

By: //s//Lewis Chimes
Lewis H. Chimes (ct 07023)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
203-324-7744
Fax: 203-969-1319
lchimes@chimeslaw.com

Please enter my appearance on behalf of the plaintiff in this matter.

ATTEST: A TRUE COPY
Richard W. Albrecht
State Marshal
Middlesex County
An Indifferent Person