UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICK TORNEO | : | CIVIL NO. 3:17CV1826(SRU) |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| DORA SCHRIRO, BRIAN | : | |
| MERAVIGLIA, REGINA RUSH- | : | |
| KITTLE, and DAVID ROSADO | : | |
| *Defendants* | : | JANUARY 31, 2018 |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE MOTION TO AMEND THE COMPLAINT [Doc. #23]

The Defendants Dora Schriro, Brian Meraviglia, Regina Rush-Kittle and David Rosado, in their individual capacities ("Defendants") submit this opposition to Plaintiff's Motion to Amend the Complaint. [*See* Doc. ##23, 24]. The Court should deny Plaintiff's motion because the additional claims and allegations raised in the Amended Complaint are barred for the same reasons as the claims in the original Complaint, which Defendants have moved to dismiss in its entirety. Defendants incorporate by reference the reasons listed in their December 4, 2017 Motion to Dismiss [*See* Doc. #16] and January 22, 2018 Reply Memorandum Of Law In Support of the Motion to Dismiss [*See* Doc. #25].

Further, since the Defendants have established that they are protected by qualified immunity as there was no clearly established law that would have put them on notice that their actions could violate a constitutionally protected property interest which the amendment will not cure, this matter should be dismissed. Additionally, the lack of jurisdiction of the labor arbitrator does not toll the statute of limitations in this matter especially in light of the represented Plaintiff's knowledge of that fact years before the three year statute of limitations had expired.

1

Plaintiff's proposed Amended Complaint seeks to add additional counts against the Defendants in their official capacities to overcome the acknowledged bar to injunctive or equitable relief against the Defendants in their individual capacities[1]. However, to the extent the Plaintiff now amends to obtain monetary damages from the official capacity Defendants, those claims are barred by sovereign immunity. [*See* Doc. #23-1, Second Count Five at page 15, and Prayer for Relief sections c, d, e, f, g, and h]. Plaintiff's request to the Claims Commissioner seeking permission to sue [Doc. #16, Exhibit B] for monetary damages is an admission that sovereign immunity applies to these claims.[2] This amendment should not be permitted.

Since Plaintiff fails to establish that he had a protected property right in his probationary position of Lieutenant, his procedural due process claims fail and this matter should be dismissed. [*See* Opposition to Motion to Dismiss, Doc. # 21]. Accordingly, even the amendment does not cure that the Plaintiff cannot allege violation of his procedural due process rights based upon the alleged wrongful extension of his probationary period as Lieutenant. Since amendment is futile, it should not be permitted.

## I. **BACKGROUND**

Plaintiff alleges that the Defendants violated his due process rights at the State of Connecticut Department of Emergency Services and Public Protection (DESPP)'s division of State Police by removing him as a Lieutenant during his allegedly improperly extended working test period. [Doc. #1-1, Complaint]. He brought suit against the Defendants in their individual

---

[1] The Amended Complaint now contains eight (8) counts but they are labeled Counts One – Seven, and an additional Count Five follows Count Seven. This brief will refer to the final Count as the Second Count Five. [*See* Doc. #23-1 at page 15].

[2] As discussed in the Motion to Dismiss, sovereign immunity does not bar a request for *injunctive relief* pursuant to Sec. 1983 when brought against official capacity defendant state employees. In 2016 Plaintiff sought permission from the Claims Commissioner for permission to sue for monetary damages; there is no allegation that such permission has been granted. [*See* Doc. #16, Exhibit B].

capacities only; no state official was sued in his/her official capacity. [Doc. #1-1, Complaint ¶¶4-7]. Plaintiff alleges that on September 6, 2013, he was promoted from Master Sergeant to the rank of Lieutenant. His working test period of one year was to expire on September 6, 2014. [Doc. #1-1, Complaint ¶31].

### A. April 2013 Incident

On the morning following a police shooting, officers in the Middletown Police Department found Plaintiff in his cruiser on the side of the road, taking him to the took him to the Middletown Police Department, treating this as a medical issue. [Doc. #1-1, Complaint ¶¶26, 27].

### B. Complaints About Torneo To State Police

Plaintiff alleges that on January 21, 2014, four months after being promoted to Lieutenant, an anonymous complaint was made accusing the State Police of covering up the fact that Torneo had driven drunk on the night of a police shooting in April 8, 2013. Plaintiff alleges that the State Police received a second complaint in April 2014 assailing them for covering up for Torneo in regard to the April 8, 2013 incident. [Doc. #1-1, Complaint ¶¶36, 37].
Moreover, in 2014 while Torneo was the Commander at Troop F, there were several complaints about sexual discrimination. [Doc. #1-1, Complaint ¶39]. Plaintiff alleges that Andy Matthews, the President of the State Troopers Union (NP- I), went directly to Commissioner Schriro on behalf of the female state troopers, demanding that Torneo be removed from Troop F. [Doc. #1-1, Complaint ¶¶40-42]. In May 6, 2014 Patrick Torneo was transferred from Troop F to the State Police Headquarters. [Doc. #1-1, Complaint ¶ 43].

Then on May 29, 2014, an Internal Affairs investigation was commenced in regard to the incident in Middletown the morning after the shooting on April 8, 2013. [Doc. #1-1, Complaint ¶

3

44]. The Internal Affairs investigation was done by Defendant Captain David Rosado who conducted the investigation under the supervision of Defendant Major Rush-Kittle. Plaintiff alleges that Defendant Major Regina Rush-Kittle, Commanding Officer of Professional Standards and Compliance (Internal Affairs) then requested that Plaintiff's working test period be extended for an additional six months. [Doc. #1-1, Complaint ¶¶49, 50].

Before the conclusion of his working test period, *on August 7, 2014* Plaintiff was notified by a letter that his working test period was extended [See Doc. #16, Exhibit A]. Confusingly, Plaintiff alleges that he was not notified in writing in advance of the extension of his working test period, in violation of State of Connecticut's rules and policies, *although he also alleges that this working test period was set to expire on September 6, 2014.* [Doc. #1-1, Complaint ¶¶ 31, 54]. On October 2, 2014, Plaintiff was notified that he was being demoted to Master Sergeant. [Doc. #1-1, Complaint ¶ 55]. Plaintiff alleges that as a result of the State Police's improper extension of the working test period, he was demoted while still under his working test period. [Doc. #1-1, Complaint ¶ 62]. While Plaintiff alleges that he has no alternative administrative remedies to pursue his claim, he is currently pursuing a Claim at the Office of the Claims Commissioner, File No. 24741 where he is represented by the same counsel. [Doc. #1-1, Complaint ¶ 62; Doc. #16, Exhibit B).

Plaintiff asserts he had a *right to be a Lieutenant* in the State Police, alleging that Conn. Gen. Stat. §5-230 governs the standard for removal of a state employee during his working test period and that the Connecticut State Police Policy Manual also addresses the standard for removing a state police officer during a working test period:

> At any time during the work test period and after a fair trial, an appointing authority may remove an employee if, in the opinion of the appointing authority, the work test period indicates that the employee is unable or unwilling to perform the prescribed duties required to merit continuance in the new job position.

[Doc. #1-1, Complaint ¶¶ 11, 12].

Plaintiff further alleges that the Defendants willfully and/or corruptly relied upon secret information provided to injure Plaintiff's right to be a tenured Lieutenant in the State Police, in violation of Conn. Gen. Stat. §52-226[3] and willfully used influence, and official and/or political authority to prevent Plaintiff from becoming a tenured Lieutenant in the State Police, in violation of Conn. Gen. Stat. §52-226.[4]

In support of his proposed amendment, Plaintiff now asserts,

> The plaintiff claims that these defendants improperly demoted him during his working test period for invalid and improper reasons, in violation of his federal due process rights, and improperly extended his working test period for invalid and improper reasons, thereby depriving him of his federally protected property interest and right to have the determination of his demotion be adjudicated by a "for cause" standard under his collective bargaining agreement.

[Doc. # 24 at 1].

While Plaintiff now concedes he cannot maintain an action against the current Defendants for equitable relief, and seeks to amend to add new Defendants in their official

---

[3] Conn. Gen. Stat. § 52–226a provides in pertinent part, "In any civil action tried to a jury, **after the return of a verdict and before judgment has been rendered thereon, or in any civil action tried to the court**, . . . the prevailing party may file a written motion requesting the court to make a special finding to be incorporated in the judgment or made a part of the record, as the case may be, that the action or a defense to the action was without merit and not brought or asserted in good faith. Any such finding shall be admissible in any subsequent action brought to section 52–568." (emphasis supplied).

[4] Regs., Conn. State Agencies § 5-240-1a provides in pertinent part:
The following terms shall have the following meanings for the purposes of Section 5-240-1a through 5-240-8a of the Regulations of Connecticut State Agencies:

> (a) "Appointing authority" means a board, commission, officer, commissioner, person or group of persons having the power to make appointments by virtue of a statute.
>
> (b) "Employee" means an employee holding a position in the classified service of the state, whether full time or part time, for which compensation is paid, **who has been appointed to that position following successful completion of a working test period.**
> (emphasis supplied).

capacity – which is essentially a claim against the State itself, that claim is also futile. [Doc. #1-1, Complaint, Prayer for Relief ¶¶a, b, and h]. Suits against state officials in their official capacity are treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because the real party in interest in an official-capacity suit is the governmental entity, only granting of prospective injunctive relief to prevent a continuing violation of federal law is permitted. *Id*.

For the same reasons discussed above, Plaintiff has failed to assert this claim within the statute of limitations and his alleged ignorance of the lack of jurisdiction of the labor arbitrator does not save his claims. As discussed in Defendants' Brief and Reply Brief in support of their Motion to Dismiss the Complaint, Plaintiff's claims are barred by the statute of limitations and qualified immunity. [*See* Doc. ##16, 25] Accordingly, amendment is futile.

## II. <u>ARGUMENT</u>

### A. Amendment Is Futile

It is well established that leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure should be denied when the proposed amendments are futile. Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). A district court may deny leave for "good reason" such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200-01 (2d Cir. 2007).

This Court should deny the Plaintiff's motion to amend the complaint because the proposed Amended Complaint is futile. The Second Circuit has held that "leave to amend a

complaint may be denied when amendment would be futile." *Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014). Amendment is futile when the proposed amended complaint could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001); s*ee also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (establishing plausibility framework for evaluating a motion to dismiss).

The court measures futility under the same standard as a motion to dismiss. If a proposed amended complaint cannot survive a motion to dismiss, the motion to amend must be denied as futile. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). See also *Lucente v. Int'l Bus. Machs. Corps*, 310 F.3d 243, 258 (2d Cir. 2002). Plaintiff's proposed amendments are futile because, like his claims in the original Complaint, any new claims and allegations are barred by: (1) the failure to state a claim; (2) the statute of limitations; and, (3) qualified immunity.

Second, the proposed amendments are still futile because, like the original Complaint, the proposed Amended Complaint fails to state a claim upon which relief can be granted. Indeed, there is not a single new allegation in the proposed amendments that addresses the deficiencies in Plaintiff's procedural due process claims, as discussed in Defendants' pending Motion to Dismiss. (*See* Doc. #.).

Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Plaintiff's claims are futile because as a probationary employee, he had no protected right to the position of Lieutenant and he has not cited to any state law that provides that protection.

Moreover, Plaintiff's proposed amended complaint—submitted after the Defendants moved to dismiss the complaint in its entirety—would not survive a renewed motion to dismiss. In particular, the proposed amended complaint still contains allegations that Plaintiff was a probationary employee as Lieutenant and he was demoted during his working test period. It also does not include any additional allegations suggesting Plaintiff had any constitutionally protected property right or any substantive right under state law to the position of Lieutenant. As a result, this Court should conclude amendment would be futile as it would not cure the defects in the complaint that is subject to the pending motion to dismiss. Given that the proposed Amended Complaint would not survive a motion to dismiss, this Court should deny the Plaintiff leave to amend.

### B. Plaintiff Has No Protected Property Right

The lynchpin of any due process claim is a recognized property right. Binding precedent and leading authority preclude probationary employees, like Plaintiff, from claiming a property right in employment. The reasoning is well settled and crystal clear. Probationary employees have no more than a unilateral expectation in the position, and the law requires more than a unilateral expectation to establish a property interest in a benefit.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). *See also Looney v. Black,* 702 F.3d 701, 706 (2nd Cir. 2012)

(" 'unilateral expectation' is not sufficient to establish a constitutionally protected property right... Rather, a plaintiff must have a legitimate claim of entitlement to the alleged property interest. . . .) (Internal quotation marks omitted).

To find a procedural due process violation, the threshold inquiry is whether the plaintiff has established a protected liberty or property interest. If so, the court must then consider whether there was a deprivation of the identified interest. Whether a protected property interest exists is a question of state law. *See Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). In the employment context, a plaintiff must show that state law created a property interest in the alleged employment or in the benefit that was removed. *See Bernheim v. Litt,* 79 F.3d 318, 322 (2d Cir.1996). In order to state a valid claim under 42 U.S.C. § 1983 for a deprivation of procedural due process, a plaintiff must plead facts showing that he possesses a liberty or property interest in the benefit or right of which he was deprived. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir.2002).

Under Connecticut law, a **"probationary employee, in the absence of legislation, is not entitled to the protective procedure accorded a career or permanent employee."** *Millard v. Connecticut Personnel Board,* 170 Conn. 541, 547, 368 A.2d 121 (1976); *see Jannsen v. Condo,* 101 F.3d 14, 16 (2d Cir.1996) ("Where state law defines an employment position as probationary, the employee lacks a legal claim of entitlement and therefore lacks a property interest in the expectation of continued employment.") (internal quotation marks omitted). Further, a promotion is not a protectable property interest unless the plaintiff has a claim of entitlement to it. *See Andreucci v. City of New Haven,* 916 F.Supp. 146, 147–48 (D.Conn.1996).

Because Plaintiff's Lieutenant position was probationary, the Defendants were not barred by statute or contract from demoting him – he had no protected property interest. *See S & D*

*Maint. Co. v. Goldin,* 844 F.2d 962, 967 (2d Cir. 1988) ("In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*").

Moreover, the additional law cited by Plaintiff is not on point and does not establish that he has a right of action pursuant to Conn. Gen. Stat. §5-226 or Conn. Gen. Stat. §5-230 [Doc. #21 at 14 -16] as addressed in the Defendants' original brief [Doc. #16]. The Connecticut State Police Policy Manual addressing the standard for removing a state police officer during a working test period supports the Defendants' actions and does not give rise to any protected property right.[5] Nor does the policy manual have the weight of a statute or collective bargaining agreement that are both approved by the General Assembly.[6]

It is beyond cavil that Plaintiff demonstrated serious performance issues while in his probationary period as Lieutenant, which had resulted in his removal as the Commander of Troop F. On January 21, 2014, four months *after* being promoted to Lieutenant, an anonymous complaint was made accusing the State Police of covering up the fact that Torneo had driven drunk on the night of April 8, 2013. The State Police received a *second complaint* in April 2014 assailing them for covering up for Torneo in regard to that drunken driving incident. [Doc. #1-1,Complaint ¶¶ 36, 37]. Also in 2014 while Torneo was the Commander at Troop F, there were *several complaints* about sexual discrimination about the treatment of female troopers. [Doc. #1-1,Complaint ¶ 39]. The State Troopers Union (NP- I), went directly to Commissioner Schriro on

---

[5] That provides that at any time during the work test period and after a fair trial, the employee may be removed if the working test period indicates that the employee is performing his duties to merit continuance in the new job position.
(Complaint, ¶¶ 11, 12).

[6] State employee collective bargaining agreements and interest arbitration must be approved by the legislature. Conn. Gen. Stat. § 5-278.

behalf of the female state troopers, *demanding that Torneo be removed from Troop F.* [Doc. #1-1, Complaint ¶¶ 40- 42]. In May 6, 2014 Patrick Torneo was transferred from Troop F to the State Police Headquarters following these numerous complaints. [Doc. #1-1, Complaint ¶ 43]. *Refusing to address sexual harassment of female troopers by his subordinates certainly does not demonstrate that Plaintiff was performing well as a Lieutenant.*

Moreover, Plaintiff offers no support for his contention that the Defendants could not consider the Plaintiff's prior conduct of being found passed out in a state police vehicle in April 2013 that led to complaints about his performance in 2014. Certainly the State Police could not ignore allegations of serious misconduct including a cover-up of illegal action by a Lieutenant who was acting as the Commander for Troop F. *Krajniak v. Wilson*, 157 Conn. 126, 132 (1968) does not support Plaintiff's claim since Torneo was dismissed *during* his working test period *after* his performance was problematic as described above, while Krajniak involved a later dismissal.

Interestingly, Plaintiff does not (and cannot)refute that as the Commanding Officer for Troop F adequate performance required that he be aware of rampant sexual harassment of female Troopers by his subordinates and that he address it. Plaintiff does not and cannot refute that adequate performance required that he not operate a vehicle, let alone a state police vehicle, while intoxicated, and that such conduct raised serious concerns about his fitness to serve as a Lieutenant. Those concerns alone demonstrate that the Plaintiff was not suitable for this leadership position and his working test period was correctly extended.

Accordingly, based on Connecticut law, Torneo did not possess have the requisite property interest either in his employment as a probationary lieutenant or in a promotion,

especially in light of his admitted performance issues, to establish a procedural due process violation .

**B.     The Individual Defendants Are Entitled To Qualified Immunity.**

To determine whether the Defendants are entitled to qualified immunity as to Torneo's procedural due process claim, the Court must look at whether the constitutionally protected property right was "clearly established." *Reichle v. Howards*, 566 U.S. 658, 663 (2012). For a constitutional right to be "clearly established" its "contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, ––– U.S. ––––, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014). Although a case "directly on point" is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (citation and internal quotation marks omitted). So long as existing case law "did not preclude" an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity. *Lane v. Franks*, ––– U.S. ––––, 134 S.Ct. 2369, 2381, 189 L.Ed.2d 312 (2014).

On January 22nd the U.S. Supreme Court reversed the United States Court of Appeals for the District of Columbia Circuit and reinforced that to be clearly established, a legal principle must be settled law that clearly prohibited the officer's conduct in the particular circumstances before him, *Dist. of Columbia v. Wesby*, No. 15-1485, 2018 WL 491521. *Wesby* involves a Section 1983 civil suit against the District of Columbia and five of its police officers, brought by individuals who were arrested for holding a party in a house they did not have permission to enter.

In *Westby,* the Supreme Court emphasized the high threshold to find that the law as clearly established means that, at the time of the officer's conduct the law was sufficiently clear

that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." "This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)." *Dist. of Columbia v. Wesby*, No. 15-1485, 2018 WL 491521, at *10. *Wesby* noted that to be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent and the rule must be "settled law," *Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (*per curiam* ), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority. *See Wilson v. Layne,* 526 U.S. 603, 617 (1999).

> Further, Westby concluded,
>
> It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. See *Reichle,* 566 U.S., at 666. Otherwise, the rule is not one that "every reasonable official" would know. *Id.,* at 664 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna,* 577 U.S. ——, —— (2015) (*per curiam* ) (slip op., at 6). **We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."** *Plumhoff, supra,* at ——-—— (slip op., at 12–13) (internal quotation marks and citation omitted).

(emphasis supplied). *Dist. of Columbia v. Wesby*, No. 15-1485, 2018 WL 491521, at 11

Just last week, the Second Circuit addressed qualified immunity in a summary order in a matter where plaintiff inmates claimed that a correctional officer fondled their genitals during pat-frisks when they were inmates at a state prison, and that his superior was deliberately indifferent to the officer's predations, all in violation of the Eighth Amendment. *Crawford, et al*

13

*v. Cuomo, et al* No. 16-3466-CV, 2018 WL 542578 (2018). "The nub of the question before us is whether an official who engaged in abhorrent conduct that would not be condoned post-*Crawford I* would nonetheless be entitled to qualified immunity if the conduct occurred before *Crawford I* when the right the plaintiffs claim had arguably not yet been clearly established." *Crawford, et al v. Cuomo, et al,* No. 16-3466-CV, 2018 WL 542578 at *1.

The Court also rejected the plaintiff's argument that immunizing defendants-appellees' conduct would contravene the purposes of qualified immunity because the correctional officer, in sexually abusing plaintiffs acted far beyond the scope of his legitimate duties. While acknowledging that the officer's conduct was repugnant and intolerable, the Court concluded that qualified immunity applied, saying,

> But qualified immunity does not "turn on the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated," *Anderson*, 483 U.S. at 643, and the sole question we must answer is whether the "federal right on which the claim for relief is based" was clearly established at the time of the challenged conduct, *see Elder v. Holloway*, 510 U.S. 510, 515 (1994). Because we conclude that the unconstitutional nature of Prindle's abuse was not clearly established in 2011, qualified immunity was properly recognized.

*Crawford, et al v. Cuomo, et al,* No. 16-3466-CV, 2018 WL 542578 at *3.

Certainly, the controlling case law did not put these Defendants on notice that their conduct could give rise to a violation of federal procedural due process rights. There is simply no controlling authority that was clearly established to put these Defendants on notice. In fact, the 2015 opinion from the Second Circuit in *Cancel v. New York City Human Res. Admin./Dep't of Soc. Services*, 634 Fed. Appx. 843, 844–45 (2d Cir. 2015)(summary order), supports the reasonableness of the Defendants' actions since the Court concluded that New York does not afford probationary employees property rights in their positions protected by due process and cited to *Finley v. Giacobbe,* 79 F.3d 1285, 1297–98 (2d Cir.1996) (collecting cases), and

14

Connecticut law does not either. Accordingly, the proposed amendment is futile because as the recent decisions support, qualified immunity also bars these claims.

### C. Sovereign Immunity Bars The Claims For Monetary Damages Against The Proposed Official Capacity Defendants

Plaintiff seeks to amend his Complaint to now add claims for monetary damages against the proposed official capacity Defendants. [*See* Doc. #23-1, Second Count Five at page 15, and Prayer for Relief sections c, d, e, f, g, and h]. However, these claims are barred by the doctrine of sovereign immunity.

The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore appropriately raised in a motion to dismiss. *Sullins v Rodriguez,* 281 Conn. 183, 131 (2007). The essence of sovereign immunity is that "the state cannot be sued without its consent." *Tamm v. Burns,* 222 Conn. 280, 283 (1992); *Sentner v. Board of Trustees*, 184 Conn. 339, 342 (1981).

It is axiomatic that the state is immune from suit unless, by appropriate legislation, it consents to be sued. *State v. Kilburn*, 81 Conn. 9, 11 (1908); *Baker v. Ives*, 162 Conn. 295, 298 (1972); *State v. Chapman*, 176 Conn. 362, 364 (1978); *F.D.I.C. v. Peabody*, 239 Conn. 93, 102 (1996); *Doe v. Heintz*, 204 Conn. 17 (1987); *Barde v. Board of Trustees of Regional Community Colleges*, 207 Conn. 59 (1988); *Krozser v. City of New Haven*, 212 Conn. 415 (1989), *cert. denied*, 493 U.S. 1036 (1990). Sovereign immunity "protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." *Shay v. Rossi*, 253 Conn. 134, 165 (2000). "In Connecticut, we have long recognized the validity of the common-law principle that the state cannot be sued without its consent and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state . . . . " *Horton v. Meskill*, 172 Conn. 615, 623 (1977).

As explained by the Supreme Court, "'the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property.'" *Shay v. Rossi*, 253 Conn. 134, 165-66 (2000)."We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Citation omitted; internal quotation marks omitted.) *Miller v. Egan,* 265 Conn. 301, 313 (2003). "The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Internal quotation marks omitted.) *Tuchman v. State,* 89 Conn. App. 745, 751 *cert. denied,* 275 Conn. 920 (2005).

Once the State has asserted a sovereign immunity defense, the plaintiff bears the burden of establishing that sovereign immunity is inapplicable. *See C.R. Klewin N.E., LLC v. Fleming*, 284 Conn. 250, 258-59 (2007). To meet that burden, the plaintiff must identify and analyze the legal theory on which sovereign immunity is not applicable. *See DePietro v. Dep't of Pub. Safety*, 126 Conn. App. 414, 421 (2011).

Nonetheless, our Supreme Court has recognized limited exceptions to the state's immunity from suit. "A plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or *by force of a necessary implication,* statutorily waived the state's sovereign immunity ... or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority or pursuant to an unconstitutional statute." *Lyon v. Jones,* 104 Conn.App. 547, 552, cert. granted, 285 Conn. 914 (2008). If the plaintiff is unable to establish the applicability of one of those exceptions, however, the doctrine of sovereign immunity protects the state from ultimate

liability, as well as from having to litigate the claim. *Manifold v Ragaglia,* 891 A.2d 106, (Conn. App. 2006).

The doctrine of sovereign immunity provides that the state is immune from suit unless it consents to be sued. *Miller v. Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). There are few and narrowly construed exceptions to this doctrine. *Housatonic Railroad Co. v. Commissioner of Revenue Services*, 301 Conn. 268, 275, 21 A.3d 759 (2011); *DaimlerChrysler Corp. v. Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007). Three exceptions to the doctrine of sovereign immunity have been recognized by our Supreme Court: "(1) when the legislature either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity ... (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights ... and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted; internal quotation marks omitted.) *Tuchman v. State*, 89 Conn.App. 745, 753, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). Any exceptions to the doctrine of sovereign immunity for actions by state officers in excess of their statutory authority applies only to actions evoking declaratory or injunctive relief and not to those seeking monetary damages. *Miller v. Egan, supra*, 265 Conn. 312–13. See *Jacques v. Connecticut Dep't of Corr.*, No. KNLCV175015515S, 2017 WL 6947808, at *3 (December 12, 2017 ruling on motion to dismiss, Handy, J.).

No such exception exists in this case. Absent such an exception, the Plaintiff was required to first obtain permission from the Connecticut Claims Commissioner before suing the state or any of its officials in their official capacities. General Statutes § 4–142. "[T]he claims

commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim ... This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the [claims] commissioner or other statutory provisions." (Internal quotation marks omitted.) *Columbia Air Services, Inc. v. Dept. of Transportation*, 293 Conn. 342, 352, 977 A.2d 636 (2009). See also *Jacques v. Connecticut Dep't of Corr.*, Superior Court No. KNLCV175015515S, 2017 WL 6947808 (granting motion to dismiss).

Any statutory waiver of immunity must be narrowly construed. *Duguay v. Hopkins*, 191 Conn. 222, 228 (1983). While a statute may waive sovereign immunity "by the use of express terms or by force of a necessary implication", where a statute is ambiguous, "in the absence of clear legislative intent, [our Supreme Court] will not interpret a statute as waiving the state's sovereign immunity." *Stuckman v. Burns*, 205 Conn. 542, 559 (1987).

The statutes cited by Plaintiff do not provide for a private cause of action nor do they authorize the award of monetary damages against the state or state officials in their official capacity. Plainly, when the legislature wishes to abrogate sovereign immunity and create a cause of action for money damages against the state it knows how to do so. See e.g. Conn. Gen. Stat. § 52-556 (motor vehicle victims injured by state employees "shall have a right of action against the state to recover damages"); Conn. Gen. Stat. § 13a-144 (providing that individuals injured through defective highways "may bring a civil action to recover damages" sustained thereby against the Commissioner of Transportation). The clearest proof of this point is a CHRO statute, Conn. Gen. Stat. § 46a-86 (c), which expressly allows compensatory damages for "costs actually incurred by [a plaintiff] as a result of such discriminatory practice" to be awarded by a hearing

18

officer based upon a finding of liability under certain enumerated statutes, including Conn. Gen. Stat. § 46a-58.

Thus, while the Defendants do not dispute that Plaintiff can bring a claim for injunctive or declaratory relief against the proposed official capacity Defendants, sovereign immunity bars any claims for *monetary damages* against them in their official capacities. Of course, that does not cure the futility of this proposed amendment as addressed in prior sections.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend is futile and should be denied.

    Respectfully submitted,

    DEFENDANTS

    DORA SCHRIRO, BRIAN MERAVIGLIA, REGINA RUSH-KITTLE, and DAVID ROSADO (In Their Individual Capacities Only)

    GEORGE JEPSEN
    ATTORNEY GENERAL

By:   /s/ *Nancy A. Brouillet*
    Nancy A. Brouillet
    Assistant Attorney General
    55 Elm Street, P.O. Box 120
    Hartford, CT 06141-0120
    Tel: (860) 808-5340
    Fax: (860) 808-5383
    Federal Bar No. ct03138
    Email: Nancy.Brouillet@ct.gov

## **CERTIFICATION**

I hereby certify that on January 31, 2018 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Nancy A. Brouillet*
Nancy A. Brouillet (#ct03138)
Assistant Attorney General