**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PATRICK TORNEO | : | CIVIL NO.  3:17CV1826 |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| DORA SCHRIRO, and | : | |
| BRIAN MERAVIGLIA, | : | |
| | : | |
| *Defendants* | : | August 14, 2018 |

**PROPOSED AMENDED COMPLAINT**

**I.  PRELIMINARY STATEMENT**

1.      This is an action under 42 U.S.C. §1983 for violation of due process breach in violation of the Fourteenth amendment of the United States Constitution relating to State of Connecticut Department of Emergency Services and Public Protection ("DESPP"), Division of State Police ("CSP")'s improper removal of Patrick Torneo from the position of Lieutenant during his improperly extended working test period.

2.      Plaintiffs claim a trial by jury in this matter.

**II.     PARTIES**

3.      At all times mentioned herein, the plaintiff, Patrick Torneo, resided in Rocky Hill, Connecticut.

4.      Patrick Torneo is currently a Master Sergeant in the Division of State Police within the Connecticut Department of Emergency Services and Public Protection (the "CSP").  He was hired in June 2001 and has served in the CSP for over sixteen years.  Throughout his career, he received numerous decorations and extremely positive performance reviews.

5.      At all times mentioned herein, the defendant Dora Schriro was Commissioner of the Connecticut Department of Emergency Services and Public Protection, and the

1

Commanding Officer of the Division of State Police.  She is being sued in her individual and official capacity.

6.      The defendant, Brian Meraviglia, is currently the Deputy Commissioner of the Connecticut Department of Emergency Services and Public Protection, and the Commanding Officer of the Division of State Police.  He became Commanding Officer in the summer of 2014.  He is being sued in his individual and official capacity.

### III.  JURISDICTION AND VENUE

7.      On or about November 1, 2017, the defendant removed this matter to federal court pursuant to 28 U.S.C. §1441 (a) – (d).

8.      There is venue pursuant to 28 U.S.C. §1391(b)(1) and (2).

### IV.  STATEMENT OF FACTS

9.      At the time of his removal from the rank of Lieutenant, Master Sergeant Torneo was a member of the Connecticut State Employees Association, SEIU Local 2001 (the "Union"), which is the exclusive bargaining agent for the NP-9 unit. The NP-9 unit consists of all State Police Lieutenants and Captains.

10.     At all relevant times, when an officer in CSP is promoted to a higher rank through CSP's examination process, the officer serves a "working test period" of one year, that is considered part of the initial examination process.

11.      Conn. Gen. Stat. §5-230 of the State Personnel Act sets the standards for working test periods for state employees:

> The Commissioner of Administrative Services shall establish appropriate working test periods of not less than three months nor more than one year for the various classes of positions. Within ten days preceding the termination of the working test period, and at such other times as the commissioner deems appropriate, the

2

> appointing authority shall report to the commissioner whether such employee is able and willing to perform his duties in a manner so as to merit permanent appointment. At any time during the working test period, after fair trial, the appointing authority may remove any employee if, in the opinion of such appointing authority, the working test indicates that such employee is unable or unwilling to perform his or her duties so as to merit continuance in such position and shall report such removal to the commissioner. . .

12. The Department of Administrative Services is responsible for the administration and interpretation of the State Personnel Act.

13. In 1996, the Commissioner of Administrative Services delegated authority to the individual state agencies to review and approve requests for extensions of working test periods for their employees.

14. On August 22, 2000, the DAS Commissioner Mazzola issued a letter (General Letter No. 31) clarifying the limited circumstances when a working test period could be extended:

   a. When an employee is placed on sick leave for more than 15 days during the working test period;
   b. When an employee is placed on Workers Compensation during the Working Test Period;
   c. When an employee is placed on leave of absence without pay for more than 3 days;
   d. When an employee transfers to another agency in the same class having partially completed the test period;
   e. When an employee's performance during the working test period is steadily improving, but has not been entirely satisfactory, an extension may be requested on those rare occasions where the extension would allow a more extensive evaluation.

15. DAS General Letter 31 also states that individuals must be counseled prior to any extension of the working test period due to performance deficiencies.

16. DAS General Letter 31 also states that individuals must be notified in writing prior to any extension of their working test period.

17. At all times mentioned herein, General Letter 31 has been applicable to the DESPP

18. Under the NP-9 Collective Bargaining Agreement, a lieutenant who is removed during

the working test period for unsatisfactory performance has no administrative remedy through the collective bargaining process.

19.    Under the NP-9 Collective Bargaining Agreement, once a lieutenant in CSP completes his working test period, any demotion would have to be for cause.

20.    On April 8, 2013, Master Sergeant Torneo was a Master Sergeant serving as second in command at Troop F.

21.    On April 8, 2013, Troop F was advised that Old Saybrook Police officers were engaged in a motor vehicle pursuit on Route 153 of a vehicle occupied by two suspects from a robbery that had just occurred in Old Saybrook.

22.    Detective Scott Wisner, also an employee of CSP, was involved in the pursuit.   His vehicle was struck by the suspects' vehicle.    Both vehicles careened off the side of the road down a steep embankment.

23.    The robbery suspects opened fire and Detective Wisner returned fire.  During the exchange, Detective Wisner was shot.

24.    Master Sergeant Torneo responded to the scene during the active gunfire exchange.

25.    He observed Detective Wisner trapped in his vehicle, went down the embankment, placed himself in the line of fire, and pulled Wisner to safety.

26.    The evening of Detective Wisner's shooting, Torneo and several other CSP officers went to Wisner's home to see him following the shooting.

27.    The following morning, officers in the Middletown Police Department found Master Sergeant Torneo in his cruiser on the side of the road and they took him to the Middletown Police Department.

28.    The Middletown police officers were aware of the incident involving the shooting of a

4

State Trooper the previous day.   They were concerned for the Master Sergeant Torneo's wellbeing.  No charges were brought against Master Sergeant Torneo.  The Middletown Police Department handled the incident as a medical issue.

29.    Prior to the incident with the Middletown police, Patrick Torneo had not received any supportive counseling by CSP.  After the incident, Master Sergeant Torneo was diagnosed with post-traumatic stress disorder and treated for symptoms related to his involvement with on-duty shooting incident.

30.    The incident involving the Middletown police the morning after the shooting was reported up the chain of command within the CSP.  This chain of command included his immediate supervisor, Lieutenant Cassista, defendant Brian Meraviglia, who was a Major at the time, Major McLean, Lieutenant Colonel Corona, and Colonel Stebbins, the commander of CSP at the time.

31.    CSP took no disciplinary actions against Master Sergeant Torneo and did not deem it necessary to conduct an internal affairs investigation.

32.    On September 6, 2013, Master Sergeant Torneo was promoted to the rank of Lieutenant. His working test period of one year was set to expire on September 6, 2014.

33.    On December 12, 2013, three months after his promotion to Lieutenant, Patrick Torneo was awarded the "Medal for Bravery" for his heroic rescue of Detective Wisner.

34.    During his working test period, Lt. Torneo's supervisors were Captain Gould and Captain Battle.

35.    At all times during his working test period, Lt. Torneo performed his duties in an exemplary and satisfactory manner.

36.    On September 11, 2014, after the conclusion of his one year working test period, Captain

Battle and Gould drafted a final probationary evaluation, and confirmed that Patrick Torneo's performance had been fully satisfactory.

37. On May 29, 2014, an internal affairs investigation (IA-14-054) was initiated against Patrick Torneo pertaining to the incident in Middletown the morning after the shooting (4/9/2013).  This investigation began thirteen months after the incident.  It was ten months after Torneo's promotion to Lieutenant.

38. The re-opening of an Internal Affairs investigation over one year after the shooting and incident against a State Trooper who had shown extraordinary courage in the line of fire, and who had documented PTSD from the incident, was truly outrageous.

39. Every ranking officer in Patrick Torneo's line of command knew what had happened, and nevertheless promoted Torneo and awarded him the Medal of Bravery for his heroism in rescuing Det. Wisner.

40. Captain David Rosado conducted the investigation under the supervision of Major Regina Rush-Kittle.  At various times in meetings with Torneo, Captain Rosado repeatedly expressed that there was insufficient evidence to sustain the charges against him.

41. On August,7, 2014, Lieutenant Torneo was notified that his working test period had been extended for an additional six months from September 5, 2014 – March 4, 2015.  The extension was based on the active Internal Affairs Investigation IA-14-054 and the outcome.

42. The extension of the working test period was improper.

43. The extension of the working test period did not meet any of the specific criteria set forth in DAS General Letter 31:

a.      He was not out on sick leave;

b.      He was not placed on worker's compensation;

c.      He was not transferred to another agency;

d.      His performance "was not steadily improving, but still not entirely satisfactory;" He did not require an extension for more extensive evaluation.

44.     Patrick Torneo was not notified in writing in advance of the extension of his working test period, in violation of State of Connecticut's rules and policies.

45.     Patrick Torneo was not counseled prior to the extension of his working test period:

46.     By letter dated October 2, 2014, defendant Brian Meraviglia informed Lieutenant Torneo that he was suspended for five work days without pay, to be reflected in his personnel records.  The letter also stated:  "In addition to the suspension, you are being demoted from the rank of probationary Lieutenant to the rank of Master Sergeant."

47.     Lt. Colonel. Meraviglia and Commissioner Schriro were decisionmakers in the demotion of Patrick Torneo.

48.     Patrick Torneo timely pursued his administrative remedies through the Collective Bargaining Process.

49.      The Union filed a grievance on October 14, 2014 relating to both the suspension and the demotion.

50.     The matter went to arbitration in June-July 2015.

51.     The Arbitrator issued its Decision and Award on November 16, 2015.

52.     The Arbitrator found that the CSP failed to prove that the misconduct charged actually occurred.  Absent such proof, there was no just cause for the five-day suspension. Therefore, the Arbitrator set aside the five working days suspension.

53.   The Arbitrator also determined he lacked jurisdiction to rule on the demotion issue because it occurred during the extended working test period, and he had no jurisdiction under the NP-9 collective bargaining agreement.  The arbitrator noted in his decision that if the demotion had not occurred during the working test period, he would have set aside the demotion.

54.   If Torneo's working test period had expired, as required under the rules and policies, he would have been a tenured lieutenant and his promotion would have been arbitrated under the "Just Cause" standard of the NP-9 CBA and he would have prevailed at his arbitration.

55.   In light of the arbitrator's ruling, on January 2016, the Union sent a letter to the CSP on Torneo's behalf requesting that the CSP elevate Master Sergeant Torneo back to the rank of Lieutenant.

56.   In a letter from Colonel Meraviglia, the current Commander of CSP, dated January 27, 2016, the CSP informed the Union that it would not reinstate Master Sergeant Torneo's rank to Lieutenant.

57.   Patrick Torneo has exhausted his administrative remedies.

58.   Patrick Torneo has no alternative administrative remedies to pursue his claim.

**COUNT ONE       Patrick Torneo as to Defendant Dora Schriro in Her Individual Capacity (42 U.S.C. §1983 Violation of Due Process)**

59.   Paragraphs 1 – 57 are incorporated herein as paragraphs 1 – 57 of this First Count.

60.   At all times mentioned herein, defendant Dora Schriro was acting under color of law.

61.   Commissioner Schriro violated Patrick Torneo's constitutional right to due process, under the Fourteenth Amendment to the United States Constitution when she demoted Patrick Torneo.

62.    As a result of the improper extension of Patrick Torneo's working test period, he was
       denied the procedural rights provided by his collective bargaining agreement, including a
       guarantee that his demotion would only be for just cause.

63.    Defendant did not have just cause to demote Patrick Torneo.

64.    As a result of his improper demotion, Torneo has suffered economic and compensatory
       damages.

**COUNT TWO   Patrick Torneo as to Defendant Dora Schriro in Her Official Capacity**
**            (42 U.S.C. §1983 Violation of Due Process)**

65.    Paragraphs 1 –63 are incorporated herein as paragraphs 1 – 63 of this Second Count.

66.    As a result of the improper extension of Patrick Torneo's working test period, he was
       denied the procedural rights provided by his collective bargaining agreement, including a
       guarantee that his demotion would only be for just cause.

67.    Defendant did not have just cause to demote Patrick Torneo.


**COUNT THREE          Patrick Torneo as to defendant Brian Meraviglia in His**
**                     Individual Capacity**
**                     (42 U.S.C. §1983 – Violation of Due Process**

68.    Paragraphs 1 – 67 are incorporated herein as paragraphs 1 – 67 of the Third Count.

69.    At all times mentioned herein, the defendant Brian Meraviglia was acting under color of
       law.

70.    Colonel Meraviglia violated Patrick Torneo's constitutional right to due process, under
       the Fourteenth Amendment to the United States Constitution when he demoted Patrick
       Torneo.

71.     As a result of the improper extension of Patrick Torneo's working test period, he was
        denied the procedural rights provided by his collective bargaining agreement, including a
        guarantee that his demotion would only be for just cause.

72.     Defendant did not have just cause to demote Patrick Torneo.

73.     As a result of his improper demotion, Torneo has suffered economic and compensatory
        damages.

**COUNT FOUR     Patrick Torneo as to Defendant Brian Meraviglia in His Official
                 Capacity
                 (42 U.S.C. §1983 Violation of Due Process)**

74.     Paragraphs 1 –84 are incorporated herein as paragraphs 1 – 84 of this Fourth Count.

75.     CSP Commander Meraviglia, acting in his official capacity and under color of state law,
        violated plaintiff's federal due process rights by extending his working test period and
        demoting him.

76.     Colonel Meraviglia violated Patrick Torneo's constitutional right to due process, under
        the Fourteenth Amendment to the United States Constitution when he demoted Patrick
        Torneo.


**<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiff prays that the following relief be awarded:

a.      a declaratory judgment that the extension of Patrick Torneo's working test period
        in August 2014 was improper;

b.      a declaratory judgment that Patrick Torneo's working test period expired on
        September 6, 2014.

c.      A declaratory judgment that the defendants violated Patrick Torneo's rights under

the Fourteenth Amendment of the United states constitution, by denying him the

right to a just cause finding prior to demoting him under his NP-9 Collective

Bargaining Agreement.

d.      A declaratory judgment that pursuant to Arbitrator Weisblatt's decision, dated

November 16, 2015, there was no just cause for Patrick Torneo's demotion from

Lieutenant to Master Sargent.

e.      Injunctive relief, including the following:

   (1)   Reinstating Patrick Torneo to his position as a Lieutenant in the

   Connecticut State Police, or in the alternative, compensation for

   his future loss of income;

   (2)   Reinstating Patrick Torneo's full pension and seniority benefits as

   a Lieutenant retroactive to the date of his demotion;

   (3)   Enjoining the defendant from retaliating against Patrick Torneo or

   any other individual who has participated or otherwise cooperated

   in the prosecution and litigation of this case;

d.   damages for economic losses, including lost benefits, that he has suffered as a

result of defendants' conduct;

e.   damages for the emotional harm he has suffered;

f.   attorney fees and costs;

g.   pre-judgment and post-judgment interest on his economic losses,

h.   punitive damages;

i.   such other equitable relief as the Court deems appropriate.

11

**RESPECTFULLY SUBMITTED**
**THE PLAINTIFF**

By:    //s//*Lewis Chimes*
　　　Lewis H. Chimes  (ct 07023)
　　　Law Office of Lewis Chimes LLC
　　　45 Franklin Street
　　　Stamford, CT 06901
　　　203-324-7744
　　　Fax:  203-969-1319
　　　lchimes@chimeslaw.com

## **CERTIFICATION**

I hereby certify that on August 14, 2018, a copy of the foregoing was filed a n d s e n t t o c o u n s e l electronically.  Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Nancy A. Brouillet
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Email:  Nancy.Brouillet@ct.gov

*/s/Lewis Chimes*
Lewis Chimes

13