| | | |
|---|---|---|
| **PATRICK TORNEO** | : | CIVIL ACTION NO. 3:17-cv-01826-DJS |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **DORA SCHRIRO** and | : | |
| **BRIAN MERAVIGLIA** | : | |
| *Defendants* | : | SEPTEMBER 26, 2018 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

This is an action pursuant to 42 U.S.C. § 1983 for due process violation in plaintiff's removal as State Police Lieutenant during his improperly extended working test period. He seeks a declaratory judgment that his working test period was improperly extended, denying his right to a just cause finding for his demotion under his collective bargaining agreement, when an arbitration award under his agreement found no just cause for his demotion. He also seeks injunctive relief reinstating him as Lieutenant or compensation for future loss of income, reinstating his pension and seniority benefits as Lieutenant retroactive to his demotion, and prohibiting retaliation against him or others participating in this litigation. He seeks money damages as well for economic losses, including lost benefits, emotional harm, attorney's fees and costs, pre-judgment and post-judgment interest on his economic losses and punitive damages. While defendants dispute many of the allegations of plaintiff's complaint, they admit, as they must, those allegations for purposes of this motion to dismiss. Shoultz v. Montford

of Colorado, Inc., 754 F.2d 318, 321 (10th Cir. 1985), cert. denied, 475 U.S. 1044 (1986); Doe v. United States Department of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).

Pursuant to his collective bargaining agreement, a lieutenant removed during his working test period for such promotion due to unsatisfactory performance has no remedy through the grievance arbitration procedure of his collective bargaining agreement. Complaint, ¶ 18. Once a lieutenant completes the working test period, any demotion would be subject to the grievance procedure and require just cause. Complaint, ¶ 19. Conn. Gen. Stat. § 5-230 also provides for removal of an employee during the working test period for unsatisfactory performance. Complaint, ¶ 11. The Commissioner of Administrative Services had also issued a letter permitting extension of the working test period where performance was not entirely satisfactory to allow more extensive evaluation. Complaint, ¶ 14.

On April 8, 2013, plaintiff responded to the scene of an active gunfire exchange between robbery suspects and Detective Scott Wisner after an accident. Complaint, ¶¶ 21-24. Wisner had been shot, and plaintiff pulled him to safety. The next morning Middletown Police Department officers found plaintiff in his cruiser on the side of the road and took him to the Middletown Police Department. No charges were brought against plaintiff, who was diagnosed with post-traumatic stress disorder and given treatment related to the on-duty shooting incident. The incident with the Middletown police was reported to plaintiff's supervisors within the State Police, who took no

disciplinary action against him and did not conduct an internal affairs investigation at that time. Complaint, ¶¶ 25-31.

On September 6, 2013, plaintiff was promoted to Lieutenant, subject to a one year working test period. Complaint, ¶ 32. On May 29, 2014, an internal affairs investigation was initiated against him concerning the incident with the Middletown police. Complaint, ¶ 37. Captain David Rosado conducted the investigation under the supervision of Major Regina Rush-Kittle. On August 7, 2014, plaintiff was notified his working test period was extended for six months from September 5, 2014, to March 4, 2015, based on the active Internal Affairs Investigation and its outcome. Complaint, ¶¶ 40, 41.

By letter dated October 2, 2014, defendant Brian Meraviglia informed plaintiff he was suspended for five work days without pay and demoted from Lieutenant to Master Sergeant. Meraviglia and defendant Commissioner Schriro made the demotion decision. Complaint, ¶¶ 46-47. The union filed a grievance on October 14, 2014, over the suspension and demotion. On November 16, 2015, the arbitrator rendered an award, finding no proof of misconduct and accordingly no just cause for the suspension, but also holding lack of jurisdiction over the demotion because it occurred during the working test period and accordingly it was not subject to the contract's grievance arbitration procedure and the just cause standard under the contract, noting he would have set aside the demotion if not occurring during the working test period. Complaint, ¶¶ 49-53.

3

In January, 2016, the union sent a letter to the State Police requesting plaintiff's reinstatement as Lieutenant. In a letter from Colonel Meraviglia, now Commander of the State Police, dated January 27, 2016, the State Police informed the union it would not reinstate plaintiff as Lieutenant. Complaint, ¶¶ 55, 56.

Plaintiff filed this amended complaint in August, 2018. In his amended complaint plaintiff requests specifically in his prayer for relief a declaratory judgment of improper extension of his working test period, denying just cause finding for his demotion required by contract, an arbitration award having found no just cause; an injunction reinstating him as Lieutenant (or compensation for future lost income), his pension and seniority benefits as Lieutenant retroactive to demotion and prohibiting retaliation for participation in this litigation; and money damages for economic losses, including lost benefits, emotional harm, attorney's fees and costs, pre-judgment and post-judgment interest on his economic losses and punitive damages.

## ARGUMENT

I. **PURSUANT TO FED. R. CIV. P. 12(b)(1), THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS COMPLAINT AGAINST THE DEFENDANTS STATE AGENCY OFFICIALS IN THEIR OFFICIAL CAPACITIES BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT.**

The Eleventh Amendment to the United States Constitution bars the State of Connecticut from being sued in federal court. The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The U.S. Supreme

Court has also recognized that the Eleventh Amendment bars a suit against a State by its own citizens. "This Court's decisions thus establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another state.'" Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984) (quoting Employees v. Missouri Dept. of Public Health and Welfare, 411 U.S. 279, 280 (1973)).

"This jurisdictional bar applies regardless of the nature of the relief sought" and applies to both legal and equitable relief. Pennhurst, 465 U.S. at 100. States are also entitled to sovereign immunity from suit and not just liability. Federal Maritime Commission v. South Carolina State Ports Authority, 535 U.S. 743, 766 (2002). The Eleventh Amendment exemplifies and confirms such immunity. Id. at 753. Sovereign immunity also applies regardless of whether a suit is for monetary damages or other relief. Id. at 765-66. Also 42 U.S.C. § 1983 does not abrogate those State immunities. Quern v. Jordan, 440 U.S. 332, 341-45 (1979).

Furthermore, the Eleventh Amendment extends to State "agencies or departments," "state instrumentalities," "agencies acting under [State] control," and "arms of the State." Pennhurst, 465 U.S. at 100; Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997); Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Northern Insurance Co. v. Chatham County, 547 U.S. 189, 193 (2006); accord, In re Deposit Insurance Agency, 482 F.3d 612, 617 (2nd Cir. 2007) ("jurisdictional bar [of Eleventh Amendment] also immunizes a state entity that is an 'arm of the State.'")

5

There is no question here that the Eleventh Amendment applies to Dora Schriro, Commissioner of the Connecticut Department of Emergency Services and Public Protection and Commanding Officer of the Division of State Police, and Brian Meraviglia, Deputy Commissioner of the Connecticut Department of Emergency Services and Public Protection and the Commanding Officer of the Division of State Police, as State agency officials in their official capacities.

While States may waive their Eleventh Amendment immunity and Congress may abrogate the States' sovereign immunity; Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990); see, e. g., Smith v. Reagan, 841 F.2d 28, 30 (2nd Cir. 1988); Bapat v. Connecticut Department of Health Services, 815 F.Supp. 525, 533 (D. Conn. 1992); plaintiff has not cited any statute by which the State of Connecticut has waived such immunity or Congress has abrogated the State's sovereign immunity, especially considering courts have held that 42 U.S.C. § 1983 does not abrogate such immunity because states are not persons under that statute.

The Eleventh Amendment clearly bars an action for money damages in federal court against the State and State officials in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169 (1985). The plaintiff's claims for relief seek money damages for economic losses, including lost benefits, emotional harm, attorney's fees and costs, pre-judgment and post-judgment interest on his economic losses and punitive damages. Even his claim for injunctive relief seeks compensation as Lieutenant for lost future income, his pension and security benefits as Lieutenant retroactive to his demotion, and

6

prohibiting retaliation against him and others participating in this litigation, including similar money damages as above.

II. THE COURT LACKS JURISDICTION OVER THE PLAINTIFF'S COMPLAINT UNDER THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL AS TO ISSUE AND CLAIM PRECLUSION.

Res judicata is properly raised by motion to dismiss as a jurisdictional defense. Kaufman v. Somers Board of Education, 368 F.Supp. 28, 32 n. 3 (D. Conn. 1973). "The general rule of res judicata is that a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." Id. at 33. "If the state administrative action is first challenged in the state court, and the state court acts judicially, the state court decision is res judicata and bars a court decision by a federal court." Id. at 35 (quoting Frazier v. East Baton Rouge Parish School Board, 363 F.2d 861, 862 (5th Cir. 1966)).

"A federal court is required by 28 U.S.C. § 1738 to afford the same full faith and credit to state court judgments as would the state's own courts." Rotert v. Jefferson Federal Savings and Loan Ass'n, 623 F.Supp. 1114, 1117 (D. Conn. 1985); see, e. g., Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1095 (9th Cir. 1990); Bray v. New York Life Ins., 851 F.2d 60, 62 (2nd Cir. 1988). In New England Rehabilitation Hospital of Hartford, Inc. v. Commission on Hospitals and Health Care, 226 Conn. 105, 128 (1993), the Connecticut Supreme Court held that "[u]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim." The Court also stated that "[a]s a general

7

proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate." Id. at 129.

Moreover, res judicata applies even if the issue was not actually raised or decided in the State court because it could have been raised or decided in the prior State suit. Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2nd Cir. 1992). The State court judgment in a former suit creates a claim preclusion bar to subsequent litigation of such cases in federal court. Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 84-85 (1984).

The res judicata and collateral estoppel effect of issue and claim preclusion was confirmed as to State administrative agency decisions in University of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226 (1986). There the Court held that a State administrative agency decision on an issue had preclusive effect in federal court as to constitutional claims where the parties had an adequate opportunity to litigate it in the State proceedings.

Here plaintiff pursued his claim of illegal demotion through the grievance arbitration procedure of his collective bargaining agreement. An arbitration award was rendered on November 16, 2015, which held a lack of jurisdiction to rule on the demotion issue because it occurred during the working test period and accordingly was not subject to arbitration pursuant to the agreement. The dicta in the arbitration award as to no just cause for the demotion on the merits is irrelevant because it had already made the threshold ruling of lack of jurisdiction, which was dispositive of the demotion

issue and precluded reaching the merits. Plaintiff certainly had an adequate opportunity to litigate the procedural issue of lack of jurisdiction in the arbitration proceedings, including the alleged improper extension of his working test period. Moreover, plaintiff had the right to seek judicial review of the arbitration award pursuant to Conn. Gen. Stat. § 52-418 but did not file an appeal.

Accordingly, plaintiff's constitutional claim in federal court pursuant to 42 U.S.C. § 1983 as to his demotion from Lieutenant is precluded by res judicata and collateral estoppel on the basis of the arbitration award under his collective bargaining agreement.

III. THE COURT LACKS JURISDICTION OVER THIS COMPLAINT AGAINST THE DEFENDANTS STATE OFFICIALS IN THEIR INDIVIDUAL CAPACITIES PURSUANT TO THE DOCTRINE OF QUALIFIED IMMUNITY.

The defendants sued in their individual capacities enjoy qualified immunity from plaintiff's constitutional and statutory claims brought pursuant to 42 U.S.C. § 1983. Qualified immunity provides immunity from suit as well as liability. Fleming v. Bridgeport, 284 Conn. 502, 517 (2007).

Qualified immunity concerns whether a constitutional right was violated and whether the individual either violated clearly established law or it was objectively reasonable for him to believe that he did not. "Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The U.S. Supreme Court has set forth the analysis for determining whether an officer is entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194 (2001).  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  "[T]he next, sequential step is to ask whether the right was clearly established."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

The Second Circuit has further confirmed the inquiry required by Saucier.  "A [governmental] defendant will be entitled to qualified immunity if either (1) his actions did not violate clearly established law or (2) it was objectively reasonable for him to believe that his actions did not violate clearly established law."  Iqbal v. Hasty, 490 F.3d 143, 152 (2nd Cir. 2007).  A right will be clearly established as long as it is foreshadowed by recent precedent, such as decisions of the Supreme Court.  Tellier v. Fields, 280 F.3d 69, 84 (2nd Cir. 2000).

Here plaintiff's complaint does not allege the violation of clearly established federal constitutional and statutory rights which it was objectively reasonable for the defendants State officials sued in their individual capacities to have known.  As noted above, plaintiff pursued his claim over his demotion to arbitration under his collective bargaining agreement.  The arbitration award held lack of jurisdiction over the demotion

issue and thus inability to reach the issue of just cause for demotion because it occurred during the working test period, thus not subject to arbitration. Plaintiff could have litigated the jurisdictional issue in the arbitration proceedings and specifically claimed improper extension of his working test period. An internal affairs investigation was initiated during his working test period and constituted grounds for extension of that period to allow further evaluation, regardless of the merits of the investigation's conclusions, as it affected solely the procedural issue of nonarbitrability of the demotion to rule on its just cause. Under the circumstances it cannot be said the defendants reasonably understood their actions violated clearly established law, as the doctrine of qualified immunity "affords government officials 'breathing room' to make reasonable – even if sometimes mistaken – decisions." Distiso v. Cook, 691 F.3d 226, 240 (2012). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 132 S.Ct. 1235, 1244 (2012).

Accordingly, plaintiff's complaint against the defendants State officials sued in their individual capacities should be dismissed because it does not allege they violated his clearly established federal constitutional rights which it was objectively reasonable for them to have known, pursuant to the doctrine of qualified immunity.

## **CONCLUSION**

For the foregoing reasons, the above-entitled action should be dismissed.

DEFENDANTS

GEORGE JEPSEN
ATTORNEY GENERAL

Philip M. Schulz
Assistant Attorney General


BY: /s/ Richard T. Sponzo
     Richard T. Sponzo
     Assistant Attorney General
     Federal Bar No. ct08563
     55 Elm Street, 5th Floor
     P.O. Box 120
     Hartford, CT 06141-0120
     Tel: (860) 808-5050
     Fax: (860) 808-5388
     e-mail: richard.sponzo@ct.gov

## **CERTIFICATION**

This is to certify that on September 26, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Richard T. Sponzo_____
Richard T. Sponzo
Assistant Attorney General