UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICK TORNEO | : | CIVIL NO. 3:17CV1826 |
|     *Plaintiff* | : | |
| v. | : | |
| | : | |
| DORA SCHRIRO, BRIAN | : | |
| MERAVIGLIA | : | |
|     *Defendants* | : | November 16, 2018 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS**

**I.    PRELIMINARY STATEMENT**

The plaintiff, Patrick Torneo, has brought claims pursuant 42 U.S.C. §1983 for a breach of his of due process right in violation of the Fourteenth Amendment of the United States Constitution relating to his improper removal from the position of Lieutenant by the State of Connecticut Department of Emergency Services and Public Protection ("DESPP"), Division of State Police ("CSP").

On December 4, 2017, the defendants filed a motion to dismiss the complaint in this case. (Doc. No. 16.) After oral argument June 27, 2018 before the Honorable Stefan R. Underhill, the plaintiff filed an amended complaint in compliance with the discussion and rulings.

On September 26, 2018, the defendants filed a second motion to dismiss (Doc. No. 50). Two of the grounds that form the basis of the second motion to dismiss were already addressed by the Court at the hearing on the first motion to dismiss. The third ground alleged in the second motion to dismiss, that the case is barred by collateral estoppel, is legally and factually unsupported.

## II. RELEVANT FACTS

### A. Background

Reading the facts alleged in the complaint in a manner most favorable to the plaintiff, and drawing all reasonable inferences from the allegations:

Patrick Torneo was hired in 2001 by DESPP. Throughout his career, he received numerous decorations and extremely positive performance reviews. (Complaint ¶3).

At the time of Patrick Torneo's demotion, defendant Dora Schriro was the Commissioner of DESPP. (Complaint ¶4). Defendant Brian Meraviglia was the Deputy Commissioner of DESPP and the Commanding Officer of the Division of the State Police ("CSP"). (Complaint ¶5). Prior to his promotion to Lieutenant on September 6, 2013, Patrick Torneo was a Master Sergeant in CSP. (Complaint ¶19, 31)

### B. Shooting Incident and Aftermath

On April 8, 2013, the state police were in pursuit of two robbery suspects in Old Saybrook, which involved CSP Police Detective, Scott Wisner. His vehicle was struck by the robbery suspects' vehicle and both vehicles careened down the side of the road into a steep embankment. Wisner was trapped in his vehicle. The robbery suspects opened fire and Wisner was hit. (Complaint ¶21 - 23).

Patrick Torneo arrived during the gunfire exchange, went down the embankment, placed himself in the line of fire, and pulled Detective Wisner to safety. (Complaint ¶24-25). That evening, Patrick Torneo and several other officers went to Wisner's home after he was released from the hospital. (Complaint ¶26).

The following morning, April 9, 2013, officers in the Middletown Police Department

found Torneo on the side of the road in his vehicle and took him to the Middletown Police Department. No charges were lodged and the incident was treated as a medical issue. The incident was reported to Patrick Torneo's immediate supervisor as well as his entire chain of command. Subsequently, Patrick Torneo was diagnosed and treated for post-traumatic stress disorder as a result of the police shooting incident. CSP took no disciplinary action against Patrick Torneo and did not initiate an Internal Affairs investigation. (Complaint ¶ 27-31).

Four months later, on September 6, 2013, Patrick Torneo was promoted to Lieutenant. His working test period was set to expire on September 6, 2014. (Complaint ¶ 32.)

Three months after his promotion, Patrick Torneo was awarded the "Medal for Bravery" for his heroic rescue of Detective Wisner. (Complaint ¶33.) During his working test period, Lt. Torneo's supervisors were Captain Gould and Captain Battle. (Complaint ¶34.)

### C. Violation of due process rights and improper demotion

At the time of his removal from the rank of Lieutenant, Master Sergeant Torneo was a member of the Connecticut State Employees Association, SEIU Local 2001 (the "Union"), which is the exclusive bargaining agent for the NP-9 unit. The NP-9 unit consists of all State Police Lieutenants and Captains. (Complaint ¶9.) At all relevant times, when an officer in CSP is promoted to a higher rank through CSP's examination process, the officer serves a "working test period" of one year, that is considered part of the initial examination process. (Complaint ¶10.)

Conn. Gen. Stat. §5-230 of the State Personnel Act sets the standards for working test periods for state employees:

> The Commissioner of Administrative Services shall establish appropriate working test periods of not less than three months nor more than one year for the various classes of positions. Within ten days preceding the termination of the working test period, and at such other times as the commissioner deems appropriate, the

> appointing authority shall report to the commissioner whether such employee is able and willing to perform his duties in a manner so as to merit permanent appointment. At any time during the working test period, after fair trial, the appointing authority may remove any employee if, in the opinion of such appointing authority, the working test indicates that such employee is unable or unwilling to perform his or her duties so as to merit continuance in such position and shall report such removal to the commissioner. . .

(Complaint ¶11.)

The Department of Administrative Services is responsible for the administration and interpretation of the State Personnel Act. (Complaint ¶12.) In 1996, the Commissioner of Administrative Services delegated authority to the individual state agencies to review and approve requests for extensions of working test periods for their employees. (Complaint ¶13.)

On August 22, 2000, the DAS Commissioner Mazzola issued a letter (General Letter No. 31) clarifying the limited circumstances when a working test period could be extended:

> a. When an employee is placed on sick leave for more than 15 days during the working test period;
> b. When an employee is placed on Workers Compensation during the Working Test Period;
> c. When an employee is placed on leave of absence without pay for more than 3 days;
> d. When an employee transfers to another agency in the same class having partially completed the test period;
> e. When an employee's performance during the working test period is steadily improving, but has not been entirely satisfactory, an extension may be requested on those rare occasions where the extension would allow a more extensive evaluation.

(Complaint ¶14.)

DAS General Letter 31 also states that individuals must be counseled prior to any extension of the working test period due to performance deficiencies. (Complaint ¶15.) DAS General Letter 31 also states that individuals must be notified in writing prior to any extension of their working test period. (Complaint ¶16.)

At all times mentioned herein, General Letter 31 has been applicable to the DESPP.

(Complaint ¶17.) Under the NP-9 Collective Bargaining Agreement, once a lieutenant in CSP completes his working test period, any demotion would have to be for cause. (Complaint ¶19.)

At all times during his working test period, Lt. Torneo performed his duties in an exemplary and satisfactory manner. (Complaint ¶35.) On September 11, 2014, after the conclusion of his one year working test period, Captain Battle and Gould drafted a final probationary evaluation, and confirmed that Patrick Torneo's performance had been fully satisfactory. (Complaint ¶36.)

On August 7, 2014, Lieutenant Torneo was notified that his working test period was to be extended for an additional six months from September 5, 2014 – March 4, 2015. (Complaint ¶ 41.) The extension of the working test period was improper. (Complaint ¶42.)

The extension of the working test period did not meet any of the limited criteria for extending a working test period, as set forth in DAS General Letter 31:

a. He was not out on sick leave;

b. He was not placed on worker's compensation;

c. He was not transferred to another agency;

d. His performance "was not steadily improving, but still not entirely satisfactory;" he did not require an extension for more extensive evaluation. (Complaint ¶43.)

Patrick Torneo was not notified in writing in advance of the extension of his working test period, in violation of State of Connecticut's rules and policies. (Complaint ¶44.) Patrick Torneo was not counseled prior to the extension of his working test period. (Complaint ¶45.)

By letter dated October 2, 2014, after his working test period had expired, defendant Brian Meraviglia informed Lieutenant Torneo that he was suspended for five work days without pay, to be reflected in his personnel records. The letter also stated: "In addition to the

suspension, you are being demoted from the rank of probationary Lieutenant to the rank of Master Sergeant." (Complaint ¶46.) Lt. Colonel. Meraviglia and Commissioner Schriro were decisionmakers in the demotion of Patrick Torneo. (Complaint ¶47.)

Patrick Torneo timely pursued his administrative remedies through the Collective Bargaining Process. (Complaint ¶48.) The Union filed a grievance on October 14, 2014 relating to both the suspension and the demotion. (Complaint ¶49.) The matter went to arbitration in June-July 2015. (Complaint ¶50.) The Arbitrator issued its Decision and Award on November 16, 2015. (Complaint ¶51.) The Arbitrator found that the CSP failed to prove that the misconduct charged actually occurred. Absent such proof, there was no just cause for the five-day suspension. Therefore, the Arbitrator set aside the five working days suspension. (Complaint ¶52.) The Arbitrator also determined he lacked jurisdiction to rule on the demotion issue because it occurred during the extended working test period, and he had no jurisdiction under the NP-9 collective bargaining agreement. The arbitrator noted in his decision that if the demotion had not occurred during the working test period, he would have set aside the demotion. (Complaint ¶53.)

However, Torneo's working test period had been improperly extended; therefore, Patrick Torneo was a tenured lieutenant at the time of his demotion and his demotion should have been arbitrated under the "Just Cause" standard of the NP-9 CBA. Patrick Torneo would have prevailed at his arbitration under the "Just Cause" standard. (Complaint ¶54.)

In light of the arbitrator's ruling, on January 2016, the Union sent a letter to the CSP on Torneo's behalf requesting that the CSP elevate Master Sergeant Torneo back to the rank of Lieutenant. (Complaint ¶55.) In a letter from Colonel Meraviglia, the current Commander of CSP, dated January 27, 2016, the CSP informed the Union that it would not reinstate Master

Sergeant Torneo's rank to Lieutenant. (Complaint ¶56.)

**III.　PROCEDURAL HISTORY**

This case was initially brought against the above captioned defendants (as well as two additional defendants Regina Rush-Kittle, and David Rosado) in their individual capacities. On or about December 4, 2017, the defendants moved to dismiss the plaintiff's complaint on the grounds that, *inter alia,* the plaintiff 's claims for injunctive and equitable relief fail against the state officials in their *individual* capacities because no state individual defendant was sued in his/her official capacity as required to obtain injunctive relief; and the individual defendants are entitled to qualified immunity because they violated no clearly established right and their lack of personal involvement. (Def. Mot. to Dismiss, Doc. 16.)

 On June 27, 2018, the Court heard oral argument on the motion to dismiss and plaintiff's motion to amend the complaint in response to the motion to dismiss. After extended colloquy, it was agreed that the plaintiff would amend the complaint in conformity with the issues addressed at oral argument. The plaintiff filed an amended complaint, in conformity with the discussions with the Court, which: (1) withdrew the claims against Rush-Kittle and Rosado because they were non-decision makers and therefore lacked personal involvement in Patrick Torneo's demotion; (2) alleged claims against Dora Schriro and Brian Meraviglia both in their individual and official capacities; and (3) limited the violation of due process claim to the allegations that, at the time of his demotion, Patrick Torneo's rights as a lieutenant had vested, but he was not afforded those rights and eliminated the additional grounds for the due process claims, which the Court indicated likely were barred by the statute of limitations.

The defendants, Shriro and Meraviglia, then filed a second motion to dismiss on these two identical grounds that were in the first motion to dismiss and which the Court has already

7

decided in the plaintiff's favor. The third ground in the second motion to dismiss is equally baseless.

## IV. STANDARD OF REVIEW

In its review of a motion to dismiss, a court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). "The court takes the factual allegations of the complaint to be true, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 4, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010), and draws all reasonable inferences in plaintiff's favor, *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)". *Mercier*, 2013 U.S. Dist. LEXIS 103950, at *5-7 (D. Conn. July 25, 2013).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Importantly, the "plausibility standard does not impose an across-the-board, heightened fact pleading standard…." *Mercier v. Greenwich Acad., Inc.*, 2013 U.S. Dist. LEXIS 103950, at *6-7 (D. Conn. 2013) (citing *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008); *The Arista Records, LLC v. Doe*, 3, 604 F.3d 110, 119 (2d Cir. 2010).

## V. ARGUMENT AND DISCUSSION

### A. The Claims Against the Defendants in Their Official Capacities Are Not Barred by the Eleventh Amendment and the Defendants' Claim Is Barred by the Law of the Case.

The defendants wrongly claim in their second motion to dismiss that the Eleventh Amendment to the United States Constitution bars this lawsuit. (Defs. Memo. p. 4-7.) They incorrectly claim that this bar applies regardless of the nature of the relief sought and that 42 U.S.C. § 1983 does not abrogate the State's immunities. (Defs. Mem. p. 5.)

#### 1. The Defendants are Precluded from Litigating this Issue because the Court has Already Reviewed, Discussed and Decided It in the Plaintiff's Favor.

This claim is in direct contradiction with the admissions by counsel for the defendants at the hearing on the first motion to dismiss as well as the Court's decision. At the hearing, Assistant Attorney General Brouillet stated: "I certainly agree that you can sue a state official in their official capacity for prospective injunctive relief …." (Exhibit A, June 27, 2018 Hearing Transcript, p. 50, ll. 2-6.) A few moments later, she had the following colloquy with the Court:

> THE COURT: Well, we don't know until he brings the complaint.
>
> MS. BROUILLET: Well –
>
> THE COURT: But if he says enjoin them, require them to make me a lieutenant today –
>
> MS. BROUILLET: That's prospective.
>
> THE COURT: -- that's prospective.
>
> MS. BROUILLET: Yes.
> …
> THE COURT: I understand. My only point is he's going to file an amended complaint, so to that extent his motion to amend is granted. If he wants to bring a claim for prospective injunctive relief against an official in his or her official capacity, I think that claim arising out of these events, I think that relates back.

> MS. BROUILLET: I don't believe I could file a motion to dismiss that would be successful on that, Your Honor, I agree.
>
> THE COURT: All right. So we are going to get a new complaint. You can bring in the official capacity claim if you want to.

(Ex. A, p. 50 ll. 7-14, 22-25; p. 51, ll. 1-5.)

Accordingly, the Court has already ordered that the plaintiff may bring a claim against the defendants in their official capacity for prospective equitable relief, including reinstatement. Accordingly, the defendants are precluded from now litigating the issue of sovereign immunity for prospective injunctive relief against the defendants in their official capacity because of the principle of the law of the case. *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997)(*citing Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir. 1981)).

### 2. The Plaintiff is Entitled to Prospective Injunctive Relief (Reinstatement) Against the Defendants in Their Official Capacities

Generally, "[t]he Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).

However, "[u]nder the well-known exception to this rule first set forth in *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), . . . 'a plaintiff may sue a state official acting in his official capacity — notwithstanding the Eleventh Amendment — for prospective, injunctive relief from violations of federal law.'" *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007); s*ee Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law"). The rule of *Ex parte Young* is one of the cornerstones of the Eleventh Amendment jurisprudence. *See Quern v.*

*Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358; *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684–85 (1982); and is not mentioned in the defendants' second motion to dismiss.

Furthermore, the Second Circuit Court of Appeals has held that reinstatement is an equitable remedy that may be directed at liable individuals in their official capacities or at governmental entities themselves. *See Frank v. Relin*, 1 F.3d 1317 (2d Cir.) (equitable relief could be obtained against Relin in his official, not his individual, capacity "), cert. denied 126 L. Ed. 2d 569, 114 S. Ct. 604 (1993); *see also Rao v. New York City Health & Hospitals Corp.*, 882 F. Sup. 321, 330-31 (S.D.N.Y. 1995).

Here, the plaintiff seeks, *inter alia,* the following prospective injunctive relief: "Reinstating Patrick Torneo to his position as a Lieutenant in the Connecticut State Police, … Enjoining the defendant from retaliating against Patrick Torneo or any other individual who has participated or otherwise cooperated in the prosecution and litigation of this case…"

Accordingly, the plaintiff's amended complaint properly alleges claims for prospective injunctive relief against the defendants in their official capacities and the motion to dismiss must be denied.

### C. The Arbitration Award Does Not Preclude the Plaintiff's Claims.

The defendants also wrongly assert that res judicata and collateral estoppel prevent the plaintiff from bringing this case, which is based upon 42 U.S.C. §1983 for a breach of his due process rights in violation of the Fourteenth Amendment of the United States Constitution.

First, to invoke collateral estoppel, the defendants must demonstrate an identity of issues between those litigated in the prior administrative proceedings and those sought to be litigated in this case. *Crochiere v. Bd. of Educ. of Town of Enfield*, 227 Conn. 333, 345 (1993). During the

arbitration proceedings, the plaintiff did not litigate, nor did the Arbitrator consider or determine, the plaintiff's federal due process claims. Thus, the plaintiff did not have a full and fair opportunity to litigate his federal due process claims in the earlier proceeding, and, thus, collateral estoppel does not bar the litigation of those claims in this case. *See Prestopnik v. Whelan*, 249 Fed. Appx. 210, 212 (2d Cir.2007) (holding that collateral estoppel did not bar plaintiff from litigating equal protection claims in federal court where prior proceedings made no findings as to constitutionality of school district's tenure decision); *see, e.g., Wanamaker v. Town of Westport Bd. of Educ.,* 11 F. Supp. 3d 51, 67 (D. Conn. 2014).

Moreover, under Connecticut law, the findings of the Arbitrator are not afforded preclusive effect in this case because General Statutes § 31–51bb explicitly provides that a statutory or constitutional claim cannot be lost just because an employee is covered by a collective bargaining agreement. Section 31–51bb provides:

> No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement.

This statute was enacted to ensure that employees covered by a collective bargaining agreement retained the right to pursue statutory and constitutional causes of action despite an adverse determination in a grievance or arbitration proceeding. *Genovese,* 226 Conn. at 484–86, 628 A.2d 946 (citing: *McDonald v. West Branch,* 466 U.S. 284 (1984); *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in which the U.S. Supreme

12

Court refused to give preclusive effect to a prior arbitral decision in a subsequent court action brought to vindicate an employee's statutory rights).

Thus, the issues presented in this case are not subject to attack based upon the doctrine of collateral estoppel. *See Nichols v. City of Bridgeport,* No. CV020394052, 2008 WL 2895901, at *6 (Conn. Super. Ct. July 7, 2008); *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 67–68 (D. Conn. 2014). Accordingly, the motion to dismiss must be denied.

### D. The Doctrine of Qualified Immunity Does Not Bar the Claims Brought Against the Defendants in Their Individual Capacities; and the Law of the Case Doctrine Bars This Claim.

Section 1983 establishes a private right of action for money damages against state officials, acting "under color" of law, who violate a constitutional or statutory right. 42 U.S.C. § 1983. This "deter[s] governmental abuse and remed[ies] unlawful governmental transgressions." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018). However, "[t]o balance the need for accountability and the potential chilling effect, the Supreme Court established qualified immunity as an affirmative defense to § 1983 claims." *Id.* Officers are entitled to this qualified immunity defense "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* On a motion to dismiss, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

At the hearing of the first motion to dismiss, the Court addressed the issue of qualified immunity. (Ex. A, p. 18-19; p. 21; p. 28; p. 39- 42.) The Court determined that the DAS General Letter No. 31 was clearly established law for purposes of a motion to dismiss, and that

13

the allegations that the defendants failed to follow its specific criteria for extending the plaintiff's working test period would not entitle the defendants to qualified immunity.   (Ex. A; p. 40- 42.)

The Court addressed and rejected the defendants' same argument concerning qualified immunity raised in their first motion to dismiss.  The proposed amended complaint sufficiently alleges the claims against the defendants in their individual capacities in accordance with the discussion at the hearing on the first motion to dismiss.  Thus, this identical argument in the defendants' second motion to dismiss likewise must be rejected.

## VI.     CONCLUSION

Wherefore, for the reasons stated herein as well as those stated at the hearing on the first motion to dismiss, the defendant's Second Motion to Dismiss should be denied in its entirety.

**RESPECTFULLY SUBMITTED**
**THE PLAINTIFF**

**By:**  //s//*Mary-Kate Smith*
Lewis H. Chimes  (ct 07023)
Mary-Kate Smith (ct 26820)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
203-324-7744
Fax:  203-969-1319
lchimes@chimeslaw.com
msmith@chimeslaw.com

**CERTIFICATION**

      I HEREBY CERTIFY that on the 16th day of November, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


                                            */s/ Mary-Kate Smith*
                                            Mary-Kate Smith