# EXHIBIT A

1                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT
2
   - - - - - - - - - - - - - - - - x
3
   PATRICK TORNEO,                   :   No. 3:17-cv-01826(SRU)
4              Plaintiff,            :   915 Lafayette Boulevard
                                     :   Bridgeport, Connecticut
5          v.                        :
                                     :   June 27, 2018
6   DORA SCHRIRO, ET AL,             :
                Defendants.          :
7
   - - - - - - - - - - - - - - - - x
8

9                         MOTION HEARING

10
    B E F O R E:
11
         THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.
12


13
    A P P E A R A N C E S:
14
         FOR THE PLAINTIFF:
15
                LAW OFFICE OF LEWIS CHIMES LLC
16                   45 Franklin Street
                     Stamford, Connecticut  06901
17           BY:  LEWIS H. CHIMES, ESQ.

18       FOR THE DEFENDANTS:

19              OFFICE OF THE ATTORNEY GENERAL
                     P.O. Box 120
20                   Hartford, Connecticut  06141-0120
             BY:  NANCY A. BROUILLET,
21                ASSISTANT ATTORNEY GENERAL

22

23              Sharon L. Masse, RMR, CRR
                 Official Court Reporter
24               915 Lafayette Boulevard
              Bridgeport, Connecticut  06604
25                 Tel: (860)937-4177

(Proceedings commenced at 1:54 p.m.)

THE COURT: Good afternoon.

MS. BROUILLET: Good afternoon, Your Honor.

MR. CHIMES: Good afternoon, Your Honor.

THE COURT: We're here in the matter of Torneo v. Schriro. Could I have appearances, please.

MR. CHIMES: Lewis Chimes for the plaintiff, Patrick Torneo.

MS. BROUILLET: Nancy A. Brouillet, Assistant Attorney General, employment rights, for the defendants.

THE COURT: All right, thank you.

We're here on the motion -- principally on the motion to dismiss. There are some other motions pending, but let's focus on the motion to dismiss.

I reviewed the papers. Let me start with a couple questions. Mr. Chimes, what is the source of the constitutionally protected right?

MR. CHIMES: I think it's derived from the statutes themselves and an administrative policy in this case. Under 5-230 is the definition of the training period, the working test period. 5-226 is about the prohibition against decisions made by corruption or improper influence, and then a DAS memo from 2001 which states the circumstances when a test period can be extended.

1   have a property interest in the position of lieutenant?
2   If he does, then I think the complaint states a cause of
3   action for violation of due process. It may not state it
4   against every defendant, but we'll get back to that later.
5           So the question now becomes property rights are
6   established by state law.
7           MS. BROUILLET: Yes.
8           THE COURT: And you acknowledge that if he was
9   past his working test period, he would be a lieutenant
10  with vested interest and property rights that could be
11  subject to the due process clause.
12          MS. BROUILLET: If he successfully passed that
13  working test period.
14          THE COURT: Right.
15          MS. BROUILLET: Yes.
16          THE COURT: And so now the focus has to become
17  was he properly in a working test period when he was
18  demoted.
19          MS. BROUILLET: Yes.
20          THE COURT: And that, I think, is the heart of
21  the issue. That's what I'm trying to get at. That was my
22  analogy. If he's extended for three years in a working
23  test period, he, I think, can say, "No, no, no, the law
24  doesn't permit that; therefore, I vested." And what I'm
25  asking now really is if the DAS letter, Number 31, limits

the reasons why his test period can be extended to the five that are identified, and there's no allegation that any of those five are met -- to the contrary, the allegation is that they weren't met -- then plaintiff has seemingly stated a claim that he was not properly in an extended work test period at the time he was demoted, meaning he vested. Because if the extension was improper, when his year ran up, he's got vested rights as a lieutenant, in which case the due process clause applies, and he's got a claim. So that's why I'm focusing on the DAS 31.

I haven't seen really any authority from either side on the question of whether the DAS 31 has the force of law for purposes of creating property rights. But -- and maybe I don't even have to get there. Maybe the issue is if the test period was not properly extended, he vested. Maybe that's as far as we have to go.

So what is your argument -- let's start there -- what is your argument that it was properly extended?

MS. BROUILLET: First of all, Your Honor, it was extended on August 7, 2014, well before it would have expired in September of 2014.

THE COURT: Yes, 11 months in it's extended, but this goes to my point before.

MS. BROUILLET: Yes.

1    wasn't on workers' comp.  I hadn't been on a paid leave of
2    absence.  I didn't transfer to another agency, and nobody
3    said that I was making good progress but needed more time.
4              All of those are situations in which the full
5    effective working test period has been minimized in some
6    way.  If a person is out, you can't evaluate them if
7    they're sick, sitting at home in bed.  You can't evaluate
8    them if they're on workers' comp.  So the permissible
9    reasons for extending that year all seem to relate to an
10   ability to evaluate.  And I haven't heard you say, We
11   needed to evaluate him because of one of these reasons.
12             MS. BROUILLET:  Okay, Your Honor, I think when
13   you look at the last reason on the list, that we need to
14   evaluate your performance, that's exactly what they're
15   doing when they're doing an internal affairs investigation
16   of his behavior.
17             THE COURT:  Was his performance steadily
18   improving during the test period?
19             MS. BROUILLET:  He received an evaluation from
20   his direct supervisor that he was doing okay, yes.
21             THE COURT:  But was it, quote unquote,
22   performance during the working test period is steadily
23   improving?
24             MS. BROUILLET:  I don't think they had that
25   evidence, Your Honor.  They had evidence or they had

1    *Krajniak*, seem to support the defendant's position.

2              As an alternative, Your Honor, and I don't know
3    if you're ready to address this, there's a qualified
4    immunity claim for these defendants, because he's only
5    sued the defendants in their individual capacities, and --

6              THE COURT:  Although he's moved to amend to make
7    them -- I think there was a typo, but I think he's moving
8    to sue them in their official capacities for purposes of
9    injunctive relief.  Is that right?

10             MR. CHIMES:  That's correct, Your Honor.

11             MS. BROUILLET:  Right, but he also has a
12   claim -- and that's the sovereign immunity argument -- the
13   plaintiff has a claim pending and has well before this
14   lawsuit was filed with the state claims commission seeking
15   to get past sovereign immunity and have permission to sue.

16             THE COURT:  Well, that's for damages.  I mean --

17             MS. BROUILLET:  Yes.

18             THE COURT:  Right.

19             MS. BROUILLET:  That's for damages, and he's
20   seeking all of the money he would get to be a lieutenant.

21             But the qualified immunity issue, Your Honor, is
22   very important because there was no clearly established
23   law telling these defendants -- and they're all obviously
24   very distinct.  Captain Rosado, who does the --

25             THE COURT:  So why is a statute and a Department

1    MS. BROUILLET: I didn't know if you wanted me
2  to continue to address the qualified immunity in regard to
3  the individual defendants, and so --
4    THE COURT: So I think we're pretty much down to
5  two, because I'm expecting I'm going to knock out Rosado
6  and Rush-Kittle, at least without prejudice to repleading,
7  because right now there's nothing pled that I think is
8  either within the statute of limitations or that is
9  subject to a due process claim that they allegedly did.
10  Now, maybe there's more than meets the eye, but I haven't
11  seen it yet. So let's focus on the big two.
12    MS. BROUILLET: When it comes to Commander
13  Meraviglia, there's no doubt he signed the letter; but
14  there's no allegation that he was the decision-maker as to
15  the demotion. As you pointed out in regard to the
16  statute, it's the commissioner, the appointing authority.
17    THE COURT: Well, that's what I don't know. If
18  he signs the letter, don't I infer, give him the benefit
19  of every inference that Meraviglia was involved?
20    MS. BROUILLET: Well, human resources also
21  signed the letter. The only person who signed the letter
22  actually extending the working test period was Jeanne
23  Anderson, the director of human resources. She's not
24  being sued for an improper extension either.
25    THE COURT: Thank goodness, and the improper

1    extension is not an issue in the case --

2              MS. BROUILLET: Okay.

3              THE COURT: -- except to the extent it bears on

4    whether there was a property interest at the time of the

5    demotion.

6              MS. BROUILLET: And then the question would be

7    as to Commander Meraviglia when he signed that letter,

8    what law told him that that action would be improper or

9    put him on notice that that action would be improper, that

10   a reasonable person would know about, given the standard

11   that you don't look at generalities as far as the law when

12   you're looking at qualified immunity.

13             THE COURT: Right. Well, this is where we get

14   back to the administrative services. If that document is

15   a guiding policy for when anybody can extend a working

16   test period, he may not have actually subjectively known

17   about it, but it is there for him to find out, just like

18   any Supreme Court decision. They may not have read the

19   Supreme Court decision, but it's out there and available

20   to an officer to read.

21             So what you're coming back to is the argument

22   this is not state law, it's not binding, it's meaningless,

23   and I can't make that determination at a motion to dismiss

24   stage, can I?

25             MS. BROUILLET: I think you can make it in this

1 case, Your Honor, based on the allegations the plaintiff
2 provided you, because as Attorney Chimes told you in his
3 argument, I'm focusing on the corrupt practices in 5-226
4 and I'm focusing on 5-230. When he gave you the response
5 as to what these people did wrong and he quoted the
6 sections of the complaint, he didn't talk about the policy
7 from DAS. He focused on what's in the complaint, and it's
8 violation supposedly of being corrupt practices and --
9      THE COURT: Well, DAS is in the complaint at
10 paragraph 15.
11      MS. BROUILLET: Okay. But when you look at
12 paragraphs 77 to 78 in Count 2 in regard to Colonel
13 Meraviglia --
14      THE COURT: Right.
15      MS. BROUILLET: -- it talks about after fair
16 trial, that he was demoted in violation of state police --
17 state police policies and state statutes, doesn't say
18 anything about DAS; and that he improperly permitted his
19 working test period to be extended, which you said is not
20 the issue and that's before the statute of limitations
21 issue; permitted the reopening of internal affairs
22 investigation, which is also apparently not an issue, that
23 happened well before his demotion; willfully obstructed
24 and/or defeated his right to be a lieutenant in violation
25 of 52-226. There's no private cause of action there, and

1  the case law actually says that, that it's actually
2  something that you would be prosecuted for.
3      THE COURT: But, again, he's not making -- he's
4  not bringing a cause of action under 52-226. He's saying
5  a violation of 52-226 had the impact of depriving me of my
6  due process rights.
7      MS. BROUILLET: And when he talks -- and when
8  you go to the underlying -- what the corrupt practices is,
9  it is listening -- the commissioner listening to the
10 complaints of the State Police Troopers Union president,
11 Andrew Matthews.
12     THE COURT: So, look. Here's what I think ought
13 to happen. I think we ought to get a new complaint on
14 file that is focused on the defendants that the plaintiff
15 has a reasonable basis to believe were involved in the
16 decision to demote. It's not clear to me that you've got
17 any claim -- any other real claim here. As I understand
18 it, the claim is because the test period was improperly
19 extended, I vested after a year. At the time I was
20 demoted, I had recognized state law rights not to be
21 demoted without due process. I think that's the claim.
22     So I think you're really talking about the
23 decision-makers who might be the first two defendants, and
24 I think you're talking about demotion. Is there anything
25 else? I mean, is there really any other claim here?

50

for them to go back retroactively and change what they did in regard to him being a lieutenant. I certainly agree that you can sue a state official in their official capacity for prospective injunctive relief, but my understanding is he's not seeking prospective injunctive relief.

THE COURT: Well, we don't know until he brings the complaint.

MS. BROUILLET: Well --

THE COURT: But if he says enjoin them, require them to make me a lieutenant today --

MS. BROUILLET: That's prospective.

THE COURT: -- that's prospective.

MS. BROUILLET: Yes.

THE COURT: Right. And he can still pursue his claim, commissioner claim for back pay, in effect, and we'll see what happens with that. But --

MS. BROUILLET: He has a motion to amend, though, Your Honor, that doesn't talk about prospective injunctive relief, and that's one of the objections to that motion to amend the amended complaint.

THE COURT: I understand. My only point is he's going to file an amended complaint, so to that extent his motion to amend is granted. If he wants to bring a claim for prospective injunctive relief against an official in

1 his or her official capacity, I think that claim arising
2 out of these events, I think that relates back.
3     MS. BROUILLET: I don't believe I could file a
4 motion to dismiss that would be successful on that, Your
5 Honor, I agree.
6     THE COURT: All right. So we are going to get a
7 new complaint. You can bring in the official capacity
8 claim if you want to.
9     In terms of discovery, I think discovery should
10 proceed once we have a complaint, a new complaint.
11 Anybody want to be heard on that?
12     MR. CHIMES: I agree with the Court.
13     MS. BROUILLET: I agree, Your Honor.
14     THE COURT: All right.
15     MS. BROUILLET: My only question, I'm a little
16 unclear, I guess I'll know when I get the complaint, if
17 we're going to have four defendants or we're going to have
18 two defendants.
19     THE COURT: I'm hoping we have two defendants --
20     MS. BROUILLET: Okay.
21     THE COURT: -- but we'll see.
22     MS. BROUILLET: And Your Honor is going to make
23 a ruling on the motion to dismiss today, I understood?
24     THE COURT: I'm sorry?
25     MS. BROUILLET: You're making a ruling today on

1  the motion to dismiss?
2              THE COURT:  Well, as a practical matter, I'm
3  granting it even though it's not entirely meritorious, let
4  me put it that way.  There are parts that are meritorious
5  and parts that are not.  But to clean things up and to
6  move forward efficiently, I think we need a new complaint,
7  so to that extent it's granted without prejudice to filing
8  a new complaint.  Let's get a new complaint on file.
9  Let's get discovery started.  Let's figure out where we
10 are.  I fully expect we'll get a summary judgment motion
11 at the appropriate time, but then we'll all know what's
12 going on.
13             MS. BROUILLET:  And I will send Attorney Chimes
14 a proposed 26(f) report that we can agree on once we get
15 the complaint.
16             THE COURT:  Great.
17             MR. CHIMES:  That's progress, Your Honor.
18             THE COURT:  There we go.  I normally have folks
19 in for a 26(f) -- for a Rule 16 conference after I get a
20 26(f) report.  I don't think we need to do that in this
21 case.  We've seen each other.  I think we're moving
22 forward.  Are there any issues that you would want to
23 raise in such a conference that we can take up now?
24             MS. BROUILLET:  I don't think there's going to
25 be any issues.  I think that we can work them out.